**EXHIBIT 6**

*U.S. Patent No. 12,420,181*

**EXHIBIT 6**
**INITIAL INFRINGEMENT CLAIM CHART FOR U.S. PATENT NO. 12,420,181**

FanDuel infringes, directly and indirectly, at least claims 1–30 of U.S. Patent No. 12,420,181 (the '181 patent). All of FanDuel's products allow gambling or betting, and are designed for Apple's iOS and Google's Android operating systems (the Accused Products), infringe literally and under the Doctrine of Equivalents, the '181 patent, including:

- FanDuel Sportsbook & Casino
- FanDuel Casino- Real Money
- FanDuel Racing
- FanDuel Fantasy Sports
- FanDuel Picks

The following claim chart is representative and demonstrates how FanDuel Sportsbook & Casino directly infringes claims 1–30 of the '181 patent. In addition to directly infringing, FanDuel also induces its customers to infringe by manufacturing and making available the Accused Products and contributorily infringes by offering for sale or selling the Accused Products, which are a material part of the invention of the '181 patent, in a manner in which they are made or adapted for use to infringe without any substantial non-infringing uses. For example, FanDuel induces its users how to infringe the '181 patent through the use of extensive support and frequently asked questions pages, available at https://support.fanduel.com/, training guides available at https://www.fanduel.com/training-guides, training videos available at YouTube.com (and other social media platforms), and within its mobile applications.

The information included in this chart is derived from publicly available sources, including screenshots of the Accused Products, Internet resources, and a review of the decompiled bytecode of the FanDuel Sportsbook & Casino application using the commercially available JEB Decompiler by PNF Software. The FanDuel Sportsbook & Casino application (APK), version 2.119.2, was obtained from the Google Play Store. Based on information available to Plaintiff at this time, including the aforementioned bytecode analysis, FanDuel Sportsbook & Casino is representative of all Accused Products, including both iOS and Android operating systems (OS), because it utilizes the same or similar backend servers, the GeoComply library, and allows for similar functionality for the user.

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
| --- | --- |
| **[1.P]** A system for performing wagering actions in connection with a gambling service using a gambling application installed on a smart phone, comprising: | The Accused Products include a "system for performing wagering actions in connection with a gambling service using a gambling application installed on a smart phone, comprising[.]"<br><br>Specifically, the Accused Products are gambling applications connected to a gambling service designed to run on mobile devices and web-enabled devices, including smart phones. In particular, the apparatus is mobile devices such as tablets and mobile phones that run both Android OS and Apple iOS, and computers that run web browsers.<br><br><br><br>*See* https://www.fanduel.com/android. |

2

| Claim Element | Accused Products |
|---|---|
|  | <br>(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino) |

| Claim Element | Accused Products |
|---|---|
|  |  |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | <br>(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino) |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| **[1.1.a]** a wrapper installed on the smart phone and associated with the gambling application, wherein at least a portion of the gambling application is written in a programming language different from the wrapper, and wherein the wrapper is configured to: | The Accused Products include a "wrapper installed on the smart phone and associated with the gambling application, wherein at least a portion of the gambling application is written in a programming language different from the wrapper, and wherein the wrapper is configured to[.]" <br><br> The Accused Products' gambling application is associated with a wrapper application that is executed on the mobile device. <br><br> At least a portion of the wrapper application is written in a different programming language than the gambling application. For example, the Accused Products for the Android OS are Android applications that are executed by the Android Runtime or Dalvik Virtual Machine (a wrapper). *See* https://source.android.com/docs/core/runtime. Moreover, on information and belief, the Accused Products also include cross-platform bytecode, and include React, Xamarin, etc. Each of which is also executed by a wrapper, such as the C# Virtual Machine or a web browser. On information and belief, the application code for iOS implementations functions similarly. <br><br> The Android Runtime and Dalvik Virtual Machines are written in C and/or C++. *See, e.g.,* https://android.googlesource.com/platform/art/+/refs/heads/main/runtime (showing the source code of the Android Runtime, and confirming it is written in C++. A review of the source code confirms that the Accused Products' gambling application is written in, for example, Java, Objective-C, React, or C#. |
| **[1.1.b]** detect a request to initialize the gambling application, a request to log into the gambling application, or a request to place a wager through the gambling service; and | The Accused Products detect a "request to initialize the gambling application, a request to log into the gambling application, or a request to place a wager through the gambling service[.]" <br><br> The Accused Products require user authorization through a login screen to utilize any of the wagering functions associated with the gambling service. For example, upon selecting any function that allows betting in the application, the Accused Products display the following screen: |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
|  |  (Android)    (iOS) |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | When the user selects the "LOG IN" button, the following screen is shown, presenting a username and password input:<br><br><br>(Android)    (iOS) |

8

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | If the user correctly enters a valid username/password combination, the Accused Products allow betting operations (assuming all of the other checks, such as location checks, are successful as well):<br><br>(Android)                                                  (iOS) |

9

| Claim Element | Accused Products |
|---|---|
| **[1.1.c]** obtain a list of applications installed on the smart phone; and | The Accused Products "obtain a list of applications installed on the smart phone[.]"<br><br>The Accused Products obtain a list of applications installed on the smart phone to determine whether the phone has any unauthorized applications on it. If so, the following message is presented to the user:<br><br>![Screenshot of mobile app showing message "Sports betting isn't allowed where you're located" with location pin icon, text "Some states don't allow sports betting. If you think you're in a state that does, contact our Support Team." then "We've found 1 error" with a "Blocked Software" notice reading "Using apps that can alter your device's location is prohibited. To continue, uninstall FakeGPS(ByteRev) and try again." followed by "Try again" and "Dismiss" buttons] |

10

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | This indicates that a "list of applications installed on the [device]" is obtained to determine if the "FakeGPS" application is installed.<br><br>This is also confirmed by a review of the bytecode. For example, the Accused Products specifically call an Android SDK function to generate a list of installed applications on the device. |
| **[1.2.a]** one or more server computers, associated with the gambling service, configured to: | The Accused Products include "one or more server computers, associated with a gambling service, configured to[.]"<br>The Accused Products use many servers that are associated with the gambling service. They are used both as primary and secondary. Some of these servers along with their correlated IP addresses used by the Accused products include:<br>• api.fanduel.com (18.238.176.80)<br>• ips.sportsbook.fanduel.com (65.8.243.38)<br>• status.fanduel.com (18.154.101.117)<br>• bvp.sportsbook.fanduel.com (23.211.124.136)<br>• us7-es.geocomply.com (23.21.79.148) |
| **[1.2.b]** receive, from the smart phone, the list of applications installed on the smart phone; | The Accused Products "receive, from the smart phone, the list of applications installed on the smart phone[.]"<br>The Accused Products receive a list of applications installed on the smart phone to determine whether the phone has any unauthorized applications on it. If so, the following message is presented to the user: |

*U.S. Patent No. 12,420,181*



| Claim Element | Accused Products |
|---|---|
|  | This indicates that a "list of applications installed on the [device]" is received to determine if the "FakeGPS" application is installed.<br><br>This is also confirmed by a review of the bytecode. For example, the Accused Products specifically call an Android SDK function to generate a list of installed applications on the device. |
| **[1.2.c.1]** in response to detecting at least one of the request to initialize the gambling application, the request to log into the gambling application, or the request to place the wager through the gambling service: | The Accused Products operate "in response to detecting at least one of the request to initialize a gambling application, the request to log into the gambling application, or the request to place a wager through a gambling service[.]"<br><br>*See* Claim Element 1.1.b. The Accused Products perform location checks prior and in response to placing a wager.<br><br>If the user is appropriately authorized, the Accused Products allows betting as shown below: |

13

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | <br>(Android)                                    (iOS) |

14

| Claim Element | Accused Products |
|---|---|
|  | In the event the user is not in a geolocation that allows gaming, the Accused Products disallow gaming activities, as shown below:<br><br><br>(Android)       (iOS) |

| Claim Element | Accused Products |
|---|---|
| **[1.2.c.2]** obtain a geographic location of the smart phone; | The Accused Products "obtain a geographic location of the smart phone[.]"<br><br>This element is met by several different mechanisms within the Accused Products. For example, throughout use of the application, a user may be repeatedly prompted to confirm or check their location in the event the location of the device cannot be determined or if the device is located in a geographical area that does not allow gambling. As a result of this explicit check, if the user is not within "a geographical area in which the user is allowed to engage in gaming activity," the following message is displayed:<br><br><br><br>(Android)                                    (iOS) |

16

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
|  | Otherwise, the user is allowed to proceed with gaming if the user is within a geographic area where they are allowed to engage in gaming activity.<br><br>In addition to the explicit checks, a review of the bytecode confirms that there are a number of location checks that occur without explicit user involvement. Specifically, the Accused Products, in part, utilize the Google Play services GMS location API, including a fused location provider for providing geofencing and geographical area handling. On information and belief, the application code for iOS implementations functions similarly.This includes determining its location via GPS, cellular, and Wi-Fi as a fused source of locational data. As noted in the Google Android documentation found at https://developers.google.com/location-context/fused-location-provider, it states:<br><br>*The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.*<br>*The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service.*<br><br>Using the aforementioned APIs along with Android's Geofence API, the Accused Products also "repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device." Specifically, the Accused Products use Android's Geofence and GeofencingEvent objects, and receive Geofence events through a custom BroadcastReceiver implementation.  This is further explained in the Google Android documentation found at https://developer.android.com/develop/sensors-and-location/location/geofencing, which states that "*for each geofence, you can ask Location Services to send you entrance and exit events, or you can specify a duration within the geofence area to wait, or dwell, before triggering an event.*" The documentation additionally states, "*[a] BroadcastReceiver gets updates when an event occurs, such as a transition into or out of a geofence, and can start long-running background work.*" |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| **[1.2.c.3]** determine whether the geographic location of the smart phone is a location where gambling is allowed; and | The Accused Products "determine whether the geographic location of the smart phone is at a location where gambling is allowed[.]" <br><br> If the user and device is appropriately authorized, the Accused Products allow betting as shown below: <br><br> (Android)      (iOS) |

18

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
|  | In the event the user is not in a geolocation that allows gaming, the Accused Products disallow gaming activities, as shown below:<br><br><br><br>(Android)                                                                  (iOS) |

| Claim Element | Accused Products |
|---|---|
| | A review of the bytecode confirms that the Accused Products utilize one or more servers to provide information on whether gambling is allowed based on the U.S. state that the device exists. The Accused Products use a request to these servers with the device's location and obtain a response that has an error message along with a token back to the device. On information and belief, the Accused Products (or their associated backend servers) decrypt the token and then provide instructions whether to allow access to the gambling service. On information and belief, the application code for iOS implementations functions similarly. |
| **[1.2.c.4]** determine whether the smart phone is rooted based in part on the list of applications installed on the smart phone; and | The Accused Products "determine whether the smart phone is rooted based in part on the list of applications installed on the smart phone[.]"<br><br>Specifically, if the device is found rooted, the following message is displayed: |

20

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| |  |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| | This is further confirmed from a review of the bytecode of the Accused Products. For example, there are at least 12 different methods that the Accused Products use to determine if a device is "rooted" or jailbroken.<br><br>Another example is if the application HideMyApplist is installed on the device. If the Accused Products detect the application is installed, they will show the following screen indicating the device is rooted:<br><br> |

| Claim Element | Accused Products |
|---|---|
| | And a review of the bytecode confirms that the Accused Products determine whether an application is disallowed in the list of applications. For example, once the list of applications is obtained from the Android SDK, that list is iterated to see if it contains any disallowed applications, such as including, but not limited to, the FakeGPS, HideMyApplist, Magisk (one of the most popular rooting utilities), and other applications. On information and belief, the application code for iOS implementations functions similarly. |
| **[1.2.d]** in response to (i) determining that the geographic location of the smart phone is the location where gambling is allowed and (ii) determining that the smart phone is not rooted, transmit a message to the smart phone indicating that a user of the smart phone is allowed to gamble through the gambling service using the gambling application. | The Accused Products operate "in response to (i) determining that the geographic location of the smart phone is at a location where gambling is allowed and (ii) determining that the smart phone is not rooted, transmit a message to the smart phone indicating that a user of the smart phone is allowed to gamble through the gambling service using the gambling application." <br><br> *See* Claim Elements 1.2.c.3 and 1.2.c.4. If the device is in a location where gambling is not permitted an error is shown. Otherwise, gambling is permitted (provided the device is not rooted). Similarly, if the device is rooted, an error message is shown. If not, gambling is permitted (provided the location is authorized). |
| **[2.1]** The system of claim 1, wherein the one or more server computers are further configured to: determine that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed; and | The Accused Products include server computers that "determine that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed[.]" <br><br> Specifically, a review of the bytecode confirms that the Accused Products keep track of the distance from a border to adjust the interval at which the location is checked within their custom implementation of Android Geofencing API. This interval changes based on how close the device is to a border. Specifically, the Accused Products receive a configuration from one or more associated backend servers that include parameters that specify how often location checks should be performed under different distances from a border. When the device's distance is very close to the border (*i.e.*, boundary), the location is checked more quickly. When the device's distance is a little further away from the border, the location is checked less regularly. On information and belief, the application code for iOS implementations functions similarly. |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
|  | Indeed, this location checking is a requirement of the Accused Products because the Accused Products explicitly display an error message when the device is in an unauthorized location:<br><br><br><br>(Android)                                                       (iOS) |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| **[2.2]** in response to determining that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products implement "in response to determining that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, prevent the user from gambling through the gambling service using the smart phone."<br><br>In the event the user has crossed a border where gambling is no longer allowed, gambling is not permitted as shown below:<br><br><br>(Android) <br>(iOS) |

| Claim Element | Accused Products |
|---|---|
| **[3.1]** The system of claim 1, wherein to determine whether the geographic location of the smart phone is at the location where gambling is allowed, the one or more server computers are further configured to: obtain information indicative of a set of wireless access points in proximity of the smart phone; | The Accused Products "obtain information indicative of a set of wireless access points in proximity of the smart phone[.]"<br><br>Based on a review of the bytecode, the Accused Products transmit Wi-Fi information regarding nearby wireless access points to their servers that include GPS coordinates that contain latitude and longitude, accuracy in meters, and altitude of the access points. The Accused Products send a list of Access Points (APs) that contain their MAC addresses, and SSIDs (Base Station Identifier) to their servers. On information and belief, the application code for iOS implementations functions similarly.<br><br>For example, the Accused Products sends Wi-Fi information to one or more servers via an XML payload in order to determine a location and whether gambling is permitted in that location. The XML has a field named "wifi" with parameters such as latitude, longitude, altitude, accuracy, etc. In addition, it contains another field named "ap," which includes information such as the Wi-Fi access point's SSID, MAC address, signal strength, frequency, etc.<br>Moreover, the Accused Products leverage Google Location Services to locate the mobile device, and those services, as explained below, use cellular networks, Wi-Fi, and GPS to perform location checks.<br><br>*See* https://support.google.com/android/answer/3467281?sjid=5336235826517115621-NC#location_accuracy&zippy=%2Cwhen-location-accuracy-is-on.<br><br>In particular, the documentation states:<br><br>*When Location Accuracy is on, your device uses these sources to get the most accurate location, which may include elevation or floor level:*<br>    • *Wireless signals, if available, such as:*<br>        o *GPS*<br>        o *Wi-Fi*<br>        o *Mobile cellular networks* |

| Claim Element | Accused Products |
|---|---|
| | On information and belief, this information is also transmitted to one or more servers. *See* https://support.google.com/android/answer/15157297?hl=en. |
| **[3.2]** for each wireless access point in the set of wireless access points, obtain a signal strength between the wireless access point and the smart phone; and | The Accused Products implement "for each wireless access point in the set of wireless access points, obtain a signal strength between the wireless access point and the smart phone[.]"<br><br>*See* Claim Element 3.1. The signal strength is one field that is sent to the servers. |
| **[3.3]** compare the determined signal strengths to a set of approved signal strengths associated with the set of wireless access points. | The Accused Products "compare the determined signal strengths to a set of approved signal strengths associated with the set of wireless access points."<br><br>*See* Claim Element 3.1.<br><br>On information and belief, the Accused Products' associated backend servers use triangulation to determine the location of the phone based on the received XML information. In addition, on information and belief, the Wi-Fi signals are compared to thresholds to eliminate any access points where their signal is unreliable because it is too weak. |
| **[4.1]** The system of claim 1, wherein the one or more server computers are further configured to: determine whether the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling | The Accused Products include server computers that "determine whether the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process[.]" |

| Claim Element | Accused Products |
|---|---|
| application is generated using a multistage hashing process; and | |
| **[4.2]** in response to determining that the gambling application is modified from the approved version, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products implement "in response to determining that the gambling application is modified from the approved version, prevent the user from gambling through the gambling service using the smart phone." |
| **[5.1]** The system of claim 1, wherein to determine whether the smart phone is rooted, the one or more server computers are configured to: compare the list of applications installed on the smart phone with a list of unapproved applications; | The Accused Products "compare the list of applications installed on the smart phone with a list of unapproved applications[.]"<br><br>*See* Claim Element 1.2.c.4. |
| **[5.2]** obtain a list of processes executing on the smart phone; and | The Accused Products "obtain a list of processes executing on the smart phone[.]"<br><br>The Accused Products check for unapproved processes in a number of ways.<br><br>First, the Accused Products receive a list of at least 50 disallowed processes from their associated backend servers. These disallowed processes include processes that indicate a device is rooted or running in a virtual machine or emulator, etc.<br><br>If any of these processes are running, gambling is unauthorized. |

| Claim Element | Accused Products |
|---|---|
|  | Second, the Accused Products look for whether dynamic instrumentation processes are executing. This is a separate and distinct check from the processes listed above. Particularly the Accused Products search various Linux system mechanisms to identify these running processes. <br><br> Finally, the Accused Products also search for running unauthorized Java modules using Java-specific mechanisms. <br><br> The following screen, which prevents gaming, is displayed if they device is running any disallowed processes: |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| |  |
| **[5.3]** compare the list of processes executing on the | The Accused Products "compare the list of processes executing on the smart phone with a list of unapproved processes." *See* Claim Element 5.2. |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| smart phone with a list of unapproved processes. | |
| **[6.1]** The system of claim 1, wherein the one or more server computers are further configured to: determine whether an operating system running on the smart phone is approved for use with the gambling service based on whether the smart phone is rooted; and | The Accused Products include server computers that "determine whether an operating system running on the smart phone is approved for use with the gambling service based on whether the smart phone is rooted[.]" <br><br> Specifically, a review of the bytecode confirms the Accused Products determine if the device is running an unapproved operating system in a number of ways. Part of this process is to ensure the device is not rooted. On information and belief, the application code for iOS implementations functions similarly. <br><br> First, the device's operating system is checked to ensure that it is not emulated or executing in a virtual environment, including other checks. <br><br> Additionally, on information and belief, the operating system version is additionally checked by the Accused Products' associated backend servers. |
| **[6.2]** in response to determining that the operating system running on the smart phone is not approved for use with the gambling service, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products implement "in response to determining that the operating system running on the smart phone is not approved for use with the gambling service, prevent the user from gambling through the gambling service using the smart phone." <br><br> *See* Claim Element 6.1. |
| **[7.1]** The system of claim 1, wherein the one or more server computers are further configured to: | The Accused Products include server computers that "identify that the smart phone is being remotely accessed[.]" <br><br> The Accused Products identify whether the smart phone is being remotely accessed by confirming that "developer options" are not enabled and the device is not using the Android Debug Interface (ADB). If either of the "developer options" are enabled and/or the device is |

31

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| identify that the smart phone is being remotely accessed; and | connected to a computer via the Android Debug Interface and/or USB/WiFi, then the following message is displayed:<br><br>4:55<br><br>**Sports betting isn't allowed where you're located**<br><br>Some states don't allow sports betting. If you think you're in a state that does, contact our Support Team.<br><br>**We've found 1 error**<br><br>ⓘ ADB Connection<br>Your mobile device is connected to a computer. Please disconnect your mobile device from the computer. In addition, please switch off Developer Options under the Settings app and try again.<br><br>Go to Settings > System > Developer Options > switch off "Use developer options".<br><br>Try again<br><br>Dismiss |

32

| Claim Element | Accused Products |
|---|---|
| **[7.2]** in response to identifying that the smart phone is being remotely accessed, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products implement "in response to identifying that the smart phone is being remotely accessed, prevent the user from gambling through the gambling service using the smart phone."<br><br>*See* Claim Element 7.1. The following message is displayed if the smart phone is being remotely accessed:<br><br> |

33

| Claim Element | Accused Products |
|---|---|
| **[8.1]** The system of claim 7, wherein to identify that the smart phone is being remotely accessed, the one or more server computers are configured to receive an indication that a WiFi connection of the smart phone is enabled, and wherein the smart phone is further configured to: | The Accused Products satisfy "wherein to identify that the smart phone is being remotely accessed, the one or more server computers are configured to receive an indication that a WiFi connection of the smart phone is enabled, and wherein the smart phone is further configured to[.]"<br><br>*See* Claim Element 7.1. |
| **[8.2]** call one of a WifiEnabled( ) function or a getWifiState( ) function of an operating system application programming interface; | The Accused Products "call one of a WifiEnabled( ) function or a getWifiState( ) function of an operating system application programming interface[.]"<br><br>On information and belief, the Accused Products call the Android SDK functions of WifiManager.getWifiState() or WifiManager.isWifiEnabled(). *See, e.g.*, https://developer.android.com/reference/android/net/wifi/WifiManager (describing each of the respective functions and how they can be used to determine whether WiFi is enabled/disabled). The ADB communications interface can be accessed via WiFi and USB. *See* Claim Element 7.1. |
| **[8.3]** determine whether a WiFi connection of the smart phone is enabled based on the call to one of the WifiEnabled( ) function or the getWifiState( ) function; and | The Accused Products "determine whether a WiFi connection of the smart phone is enabled based on the call to one of the WifiEnabled( ) function or the getWifiState( ) function[.]"<br><br>*See* Claim Element 8.2. Each of these respective functions is used to determine whether WiFi is enabled. |
| **[8.4]** transmit the determination of whether a WiFi connection of the smart phone is enabled to the one or more server computers. | The Accused Products "transmit the determination of whether a WiFi connection of the smart phone is enabled to the one or more server computers."<br><br>*See* Claim Element 7.1. |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| **[9]** The system of claim 7, wherein to identify that the smart phone is being remotely accessed, the one or more server computers are configured to receive an indication that a USB port or a docking interface of the smart phone is active. | The Accused Products "receive an indication that a USB port or a docking interface of the smart phone is active." <br><br> *See* Claim Element 7.1. |
| **[10]** The system of claim 1, wherein the wrapper is an Android wrapper application or an Apple wrapper application. | The Accused Products include a wrapper that is "an Android wrapper application or an Apple wrapper application." <br><br> *See* Claim Element 1.1.a. |
| **[11.1]** The system of claim 1, wherein the wrapper is further configured to: <br> identify unapproved activity by searching a memory of the smart phone; and | The Accused Products include a wrapper that is "further configured to: identify unapproved activity by searching a memory of the smart phone[.]" <br><br> *See* Claim Element 1.1.a. |
| **[11.2]** transmit the unapproved activity to the one or more server computers, wherein the one or more server computers are further configured to transmit, based on the unapproved activity, an indication to the smart phone that the smart phone is not | The Accused Products "transmit the unapproved activity to the one or more server computers, wherein the one or more server computers are further configured to transmit, based on the unapproved activity, an indication to the smart phone that the smart phone is not approved for use with the gambling service." <br><br> *See* Claim Element 1.2.a. |

| Claim Element | Accused Products |
|---|---|
| approved for use with the gambling service. | |
| **[12.P]** A method, comprising: | The Accused Products include "a method, comprising[.]"<br><br>*See* Claim Element 1.P and the remaining elements of Claim 1. |
| **[12.1]** detecting a request to initialize a gambling application installed on a smart phone, a request to log into the gambling application, or a request to place a wager through a gambling service; | The Accused Products detect a "request to initialize a gambling application installed on a smart phone, a request to log into the gambling application, or a request to place a wager through a gambling service[.]"<br><br>*See* Claim Element 1.1.b. |
| **[12.2.a]** in response to detecting at least one of the request to initialize the gambling application installed on the smart phone, the request to log into the gambling application, or the request to place the wager through the gambling service: | The Accused Products operate "in response to detecting at least one of the request to initialize a gambling application installed on a smart phone, the request to log into the gambling application, or the request to place a wager through a gambling service[.]"<br><br>*See* Claim Element 1.2.b. |
| **[12.2.b]** obtaining, by a wrapper associated with the gambling application, a list of applications installed on the smart phone, wherein at least a portion of the gambling application is written in a programming language | The Accused Products include "obtaining, by a wrapper associated with the gambling application, a list of applications installed on the smart phone, wherein at least a portion of the gambling application is written in a programming language different from the wrapper, and wherein the gambling application is configured to perform wagering actions in connection with a gambling service[.]"<br><br>*See* Claim Element 1.1.a and Claim Element 1.1.c. |

36

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| different from the wrapper, and wherein the gambling application is configured to perform wagering actions in connection with the gambling service; | |
| **[12.2.c]** obtaining a geographic location of the smart phone; | The Accused Products "obtain[] a geographic location of the smart phone[.]" <br><br> *See* Claim Element 1.2.c.2. |
| **[12.2.d]** determining that the geographic location of the smart phone is a location where gambling is allowed; and | The Accused Products "determin[e] that the geographic location of the smart phone is at a location where gambling is allowed[.]" <br><br> *See* Claim Element 1.2.c.3. |
| **[12.2.e]** determining that the smart phone is not rooted; and | The Accused Products "determin[e] that the smart phone is not rooted[.]" <br><br> *See* Claim Element 1.2.c.4. |
| **[12.3]** in response to (i) determining that the geographic location of the smart phone is the location where gambling is allowed and (ii) determining that the smart phone is not rooted, transmitting a message to the smart phone indicating that a user is allowed to gamble through the gambling service using the gambling application installed on the smart phone. | The Accused Products operate "in response to (i) determining that the geographic location of the smart phone is at a location where gambling is allowed and (ii) determining that the smart phone is not rooted, transmitting a message to the smart phone indicating that a user is allowed to gamble through the gambling service using the gambling application installed on the smart phone." <br><br> *See* Claim Element 1.2.d. |

37

| Claim Element | Accused Products |
|---|---|
| **[13.1]** The method of claim 12, further comprising: determining that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed; and | The Accused Products further comprise "determining that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed[.]" <br><br> *See* Claim Element 2.1. |
| **[13.2]** in response to the determination that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, preventing the user from gambling through the gambling service using the smart phone | The Accused Products operate "in response to the determination that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, preventing the user from gambling through the gambling service using the smart phone." <br><br> *See* Claim Element 2.2. |
| **[14.1]** The method of claim 12, wherein determining that the geographic location of the smart phone is at the location where gambling is allowed comprises: obtaining information indicative of a set of wireless access points in proximity of the smart phone | The Accused Products "obtain[] information indicative of a set of wireless access points in proximity of the smart phone[.]" <br><br> *See* Claim Element 3.1. |
| **[14.2]** for each wireless access point in the set of wireless access points, obtaining a signal | The Accused Products "for each wireless access point in the set of wireless access points, obtain[] a signal strength between the wireless access point and the smart phone[.]" |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| strength between the wireless access point and the smart phone; and | *See* Claim Element 3.2. |
| **[14.3]** comparing the determined signal strengths to a set of approved signal strengths associated with the set of wireless access points. | The Accused Products "compar[e] the determined signal strengths to a set of approved signal strengths associated with the set of wireless access points."<br><br>*See* Claim Element 3.3. |
| **[15.1]** The method of claim 12, further comprising: determining that the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process; and | The Accused Products further comprise "determining that the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process[.]"<br><br>*See* Claim Element 4.1. |
| **[15.2]** in response to determining that the gambling application is modified from the approved version, preventing the user from gambling through the gambling service using the smart phone. | The Accused Products operate "in response to determining that the gambling application is modified from the approved version, preventing the user from gambling through the gambling service using the smart phone."<br><br>*See* Claim Element 4.2. |

*U.S. Patent No. 12,420,181*

| Claim Element | Accused Products |
|---|---|
| **[16.1]** The method of claim 12, wherein determining that the smart phone is rooted comprises: obtaining a list of processes executing on the smart phone | The Accused Products "obtain[] a list of processes executing on the smart phone[.]" <br><br> *See* Claim Element 5.2. |
| **[16.2]** comparing the list of applications installed on the smart phone with a list of unapproved applications; and | The Accused Products "compar[e] the list of applications installed on the smart phone with a list of unapproved applications[.]" <br><br> *See* Claim Element 5.1. |
| **[16.3]** comparing the list of processes executing on the smart phone with a list of unapproved processes. | The Accused Products "compar[e] the list of processes executing on the smart phone with a list of unapproved processes." <br><br> *See* Claim Element 5.3. |
| **[17.P]** The method of claim 12, further comprising: determining that an operating system running on the smart phone is approved for use with the gambling service based on determining that the smart phone is not rooted; and | The Accused Products further comprise "determining that an operating system running on the smart phone is approved for use with the gambling service based on determining that the smart phone is not rooted[.]" <br><br> *See* Claim Element 6.1. |
| **[17.1]** in response to determining that the operating system running on the smart phone is not approved for use with the gambling service, preventing the user from | The Accused Products operate "in response to determining that the operating system running on the smart phone is not approved for use with the gambling service, preventing the user from gambling through the gambling service using the smart phone." <br><br> *See* Claim Element 6.2. |

40

| Claim Element | Accused Products |
|---|---|
| gambling through the gambling service using the smart phone. | |
| **[18.1]** The method of claim 12, further comprising: identifying that the smart phone is being remotely accessed; and | The Accused Products further comprise "identifying that the smart phone is being remotely accessed[.]" <br><br> *See* Claim Element 7.1. |
| **[18.2]** in response to identifying that the smart phone is being remotely accessed, preventing the user from gambling through the gambling service using the smart phone. | The Accused Products operate "in response to identifying that the smart phone is being remotely accessed, preventing the user from gambling through the gambling service using the smart phone." <br><br> *See* Claim Element 7.2. |
| **[20]** The method of claim 18, wherein identifying that the smart phone is being remotely accessed includes receiving an indication that a USB port or a docking interface of the smart phone is active. | The Accused Products "receiv[e] an indication that a USB port or a docking interface of the smart phone is active." <br><br> *See* Claim Element 9. |
| **[21]** The method of claim 12, wherein the wrapper is an Android wrapper application or an Apple wrapper application. | The Accused Products include a wrapper that is "an Android wrapper application or an Apple wrapper application." <br><br> *See* Claim 10. |
| **[22.1]** The method of claim 12, further comprising: | The Accused Products "further comprise[.]" |

| Claim Element | Accused Products |
|---|---|
| **[22.2]** receiving, from the wrapper, an indication of unapproved activity on the smart phone, wherein the unapproved activity is identified by searching a memory of the smart phone; and | The Accused Products "receiv[e], from the wrapper, an indication of unapproved activity on the smart phone, wherein the unapproved activity is identified by searching a memory of the smart phone[.]" <br><br> *See* Claim Element 11.1. |
| **[22.3]** transmitting, based on the unapproved activity, an indication to the smart phone that the smart phone is not approved for use with the gambling service. | The Accused Products "transmit[], based on the unapproved activity, an indication to the smart phone that the smart phone is not approved for use with the gambling service." <br><br> *See* Claim Element 11.2. |
| **[23.P]** A system for performing wagering actions in connection with a gambling service using a gambling application installed on a smart phone, comprising: | The Accused Products include a "system for performing wagering actions in connection with a gambling service using a gambling application installed on a smart phone, comprising[.]" <br><br> *See* Claim Element 1.P and the remaining elements of Claim 1. |
| **[23.1.a]** a wrapper associated with the gambling application, wherein at least a portion of the gambling application is written in a programming language different from the wrapper, wherein the wrapper is configured to: | The Accused Products include a "wrapper associated with the gambling application, wherein at least a portion of the gambling application is written in a programming language different from the wrapper, wherein the wrapper is configured to[.]" <br><br> *See* Claim Element 1.1.a. |

| Claim Element | Accused Products |
|---|---|
| **[23.1.b]** detect a request to initialize the gambling application, a request to log into the gambling application, or a request to place a wager through the gambling service; and | The Accused Products detect a "request to initialize the gambling application, a request to log into the gambling application, or a request to place a wager through the gambling service[.]" <br><br> *See* Claim Element 1.1.b. |
| **[23.1.c.1]** in response to detecting at least one of the request to initialize the gambling application, the request to log into the gambling application, or the request to place the wager through the gambling service: | The Accused Products operate "in response to detecting at least one of the request to initialize a gambling application, the request to log into the gambling application, or the request to place a wager through a gambling service[.]" <br><br> *See* Claim Element 1.2.c.1. |
| **[23.1.c.2]** obtain a geographic location of the smart phone; | The Accused Products "obtain a geographic location of the smart phone[.]" <br><br> *See* Claim Element 1.2.c.2. |
| **[23.1.c.3]** identify whether the geographic location of the smart phone is a location where gambling is allowed; and | The Accused Products "identify whether the geographic location of the smart phone is at a location where gambling is allowed[.]" <br><br> *See* Claim Element 1.2.c.3. |
| **[23.1.c.4]** identify whether the smart phone is rooted; and | The Accused Products "identify whether the smart phone is rooted[.]" <br><br> *See* Claim Element 1.2.c.4. |
| **[23.2.a]** one or more server computers, associated with the gambling service, configured to: | The Accused Products include "one or more server computers, associated with a gambling service, configured to: in response to the smart phone (i) identifying that the geographic location of the smart phone is at a location where gambling is allowed and (ii) identifying that the smart |

| Claim Element | Accused Products |
|---|---|
| in response to the smart phone (i) identifying that the geographic location of the smart phone is the location where gambling is allowed and (ii) identifying that the smart phone is not rooted, allow a user of the smart phone to gamble through the gambling service using the gambling application. | phone is not rooted, allow a user of the smart phone to gamble through the gambling service using the gambling application."<br><br>*See* Claim Element 1.2.a and Claim Element 1.2.d. |
| **[24]** The system of claim 23, wherein the wrapper is further configured to determine that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed, and wherein the one or more server computers are further configured to, in response to the determination that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products include a wrapper that is "further configured to determine that the smart phone has crossed or is near crossing a border of a geofenced area in which gambling is allowed, and wherein the one or more server computers are further configured to, in response to the determination that the smart phone has crossed or is near crossing the border of the geofenced area in which gambling is allowed, prevent the user from gambling through the gambling service using the smart phone."<br><br>*See* Claim Element 3.1 and Claim Element 3.2. |

| Claim Element | Accused Products |
|---|---|
| **[25.1]** The system of claim 23, wherein to identify whether the smart phone is rooted, the wrapper is further configured to: obtain a list of applications installed on the smart phone | The Accused Products include a wrapper that is "further configured to: obtain a list of applications installed on the smart phone[.]"<br><br>*See* Claim Element 1.1.c. |
| **[25.2]** obtain a list of processes executing on the smart phone; | The Accused Products "obtain a list of processes executing on the smart phone[.]"<br><br>*See* Claim Element 5.2. |
| **[25.3]** compare the list of applications installed on the smart phone with a list of unapproved applications; and | The Accused Products "compare the list of applications installed on the smart phone with a list of unapproved applications[.]"<br><br>*See* Claim Element 5.1. |
| **[25.4]** compare the list of processes executing on the smart phone with a list of unapproved processes. | The Accused Products "compare the list of processes executing on the smart phone with a list of unapproved processes."<br><br>*See* Claim Element 5.3. |
| **[26.1]** The system of claim 23, wherein the one or more server computers are further configured to: determine whether an operating system running on the smart phone is approved for use with the gambling service based on whether the smart phone is rooted; and | The Accused Products include server computers that are "further configured to: determine whether an operating system running on the smart phone is approved for use with the gambling service based on whether the smart phone is rooted[.]"<br><br>*See* Claim Element 6.1. |

| Claim Element | Accused Products |
|---|---|
| **[26.2]** m response to determining that the operating system running on the smart phone is not approved for use with the gambling service, prevent the user from gambling through the gambling service using the smart phone. | The Accused Products operate "in response to determining that the operating system running on the smart phone is not approved for use with the gambling service, prevent the user from gambling through the gambling service using the smart phone."<br><br>*See* Claim Element 6.2. |
| **[27]** The system of claim 23, wherein the wrapper is further configured to determine that the smart phone is being remotely accessed, and wherein the one or more server computers are further configured to, in response to the determination that the smart phone is being remotely accessed, prevent the user from gambling through the gambling service using the smart phone | The Accused Products include a wrapper that is "further configured to determine that the smart phone is being remotely accessed, and wherein the one or more server computers are further configured to, in response to the determination that the smart phone is being remotely accessed, prevent the user from gambling through the gambling service using the smart phone."<br><br>*See* Claim Element 7.1 and Claim Element 7.2. |
| **[28]** The system of claim 27, wherein to determine that the smart phone is being remotely accessed, the smart phone is configured to determine that a WiFi connection of the smart phone is turned on by calling one of a WifiEnabled( ) function or a getWifiState( ) | The Accused Products satisfy "wherein to determine that the smart phone is being remotely accessed, the smart phone is configured to determine that a WiFi connection of the smart phone is turned on by calling one of a WifiEnabled( ) function or a getWifiState( ) function of an operating system application programming interface."<br><br>*See* Claim Elements 8.1–8.4. |

| Claim Element | Accused Products |
|---|---|
| function of an operating system application programming interface. | |
| **[29]** The system of claim 27, wherein to determine that the smart phone is being remotely accessed, the wrapper is configured to determine that a USB port or a docking interface of the smart phone is active. | The Accused Products include a wrapper that is "configured to determine that a USB port or a docking interface of the smart phone is active." <br><br> *See* Claim Element 9. |
| **[30.P]** A system, comprising: | The Accused Products include a "system, comprising[.]" <br><br> *See* Claim Element 1.P and the remaining elements of Claim 1. |
| **[30.1]** means for detecting an event associated with a smart phone; | The Accused Products include a "means for detecting an event associated with a smart phone[.]" |
| **[30.2]** means for obtaining, in response to detecting the event, a geographic location of the smart phone; | The Accused Products include "means for obtaining, in response to detecting the event, a geographic location of the smart phone[.]" <br><br> *See* Claim Element 1.2.c.2. |
| **[30.3]** means for determining, in response to detecting the event, whether the geographic location of the smart phone is within a U.S. state in which gambling is allowed; | The Accused Products include "means for determining, in response to detecting the event, whether the geographic location of the smart phone is within a U.S. state in which gambling is allowed[.]" <br><br> *See* Claim Element 1.2.c.3. |
| **[30.4]** means for determining, in response to detecting the | The Accused Products include "means for determining, in response to detecting the event, whether the smart phone is rooted[.]" |

47

| Claim Element | Accused Products |
|---|---|
| event, whether the smart phone is rooted; | *See* Claim Element 1.2.c.4. |
| **[30.5]** means for determining, in response to detecting the event, whether the smart phone is being remotely accessed; and | The Accused Products include "means for determining, in response to detecting the event, whether the smart phone is being remotely accessed[.]"<br><br>*See* Claim Element 7.1. |
| **[30.6]** means for allowing, in response to (i) determining that the geographic location of the smart phone is within a U.S. state in which gambling is allowed, (ii) determining that the smart phone is not rooted, and (iii) determining that the smart phone is not being remotely accessed, a user of the smart phone to gamble through a gambling service using the smart phone. | The Accused Products include "means for allowing, in response to (i) determining that the geographic location of the smart phone is within a U.S. state in which gambling is allowed, (ii) determining that the smart phone is not rooted, and (iii) determining that the smart phone is not being remotely accessed, a user of the smart phone to gamble through the gambling service using the smart phone."<br><br>*See* Claim Element 1.2.d. |

**EXHIBIT 7**

*U.S. Patent No. 12,397,226*

**EXHIBIT 7**
**INITIAL INFRINGEMENT CLAIM CHART FOR U.S. PATENT NO. 12,397,226[1]**

FanDuel infringes, directly and indirectly, at least claims 1–3, 5–8, 12–21, and 25 of U.S. Patent No. 12,397,226 (the '226 patent). All of FanDuel's products allow gambling or betting, and are designed for Apple's iOS and Google's Android operating systems (the Accused Products), infringe literally and under the Doctrine of Equivalents, the '226 patent, including:

- FanDuel Sportsbook & Casino
- FanDuel Casino- Real Money
- FanDuel Racing
- FanDuel Fantasy Sports
- FanDuel Picks

The following claim chart is representative and demonstrates how FanDuel Sportsbook & Casino directly infringes claims 1–3, 5–8, 12–21, and 25 of the '226 patent. In addition to directly infringing, FanDuel also induces its customers to infringe by manufacturing and making available the Accused Products and contributorily infringes by offering for sale or selling the Accused Products, which are a material part of the invention of the '226 patent, in a manner in which they are made or adapted for use to infringe without any substantial non-infringing uses. For example, FanDuel induces its users how to infringe the '226 patent through the use of extensive support and frequently asked questions pages, available at https://support.fanduel.com/, training guides available at https://www.fanduel.com/training-guides, training videos available at YouTube.com (and other social media platforms), and within its mobile applications.

The information included in this chart is derived from publicly available sources, including screenshots of the Accused Products, Internet resources, and a review of the decompiled bytecode of the FanDuel Sportsbook & Casino application using the commercially available JEB Decompiler by PNF Software. The FanDuel Sportsbook & Casino application (APK), version 2.119.2, was obtained from the Google Play Store. Based on information available to Plaintiff at this time, including the aforementioned bytecode analysis, FanDuel Sportsbook & Casino is representative of all Accused Products, including both iOS and Android operating systems (OS) because it utilizes the same or similar backend servers, the GeoComply library and allows for similar functionality for the user.

---

[1] On September 30, 2025, a certificate of correction issued for the '226 patent, which corrected non-substantive, typographical errors in the issued claims.

1

*U.S. Patent No. 12,397,226*

| Claim Element | Accused Products |
|---|---|
| **[1.P]** A system, comprising: | The Accused Products include "[a] system[.]"<br><br>Specifically, the Accused Products provide a gambling platform that includes a mobile application/web frontend, as well as backend servers, working together. The frontend provides the user interface on web and mobile devices, showing live odds, contests, and account features. The backend handles core functions like user authentication, bet processing, payments, and real-time data from third parties. The mobile app offers a fast, user-friendly experience and connects to the backend securely, allowing users to place bets and manage their accounts. Together, these components create a seamless and secure betting platform. |

2



(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino)

*U.S. Patent No. 12,397,226*



(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino)

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| **[1.1]** a first and second set of server computers; and | The Accused Products include "a first and second set of server computers[.]"<br><br>The Accused Products use many servers that are associated with the gambling services. They are used both as primary and secondary. Some of these servers along with their correlated IP addresses used by the Accused products include:<br><ul><li>api.fanduel.com (18.238.176.80)</li><li>ips.sportsbook.fanduel.com (65.8.243.38)</li><li>status.fanduel.com (18.154.101.117)</li><li>bvp.sportsbook.fanduel.com (23.211.124.136)</li><li>us7-es.geocomply.com (23.21.79.148)</li></ul> |
| **[1.2]** an application configured for execution on a mobile phone, the application configured to: | The Accused Products include "an application configured for execution on a mobile phone[.]"<br><br>Specifically, the Accused Products are designed to execute on mobile devices. The Accused Products' application runs on a mobile phone that consists of an Android-based app that can be downloaded on the Google Play Store. The Google Play Store states that the app may run on Android version 7.0 and up as shown below: |

5



(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino)

The Accused Products are also supported on an Apple iOS mobile phone for an iPhone as show in the following screen where it states that the Accused Products' app iPhone version requires iOS version 15.0 or later:



*U.S. Patent No. 12,397,226*

| | |
|---|---|
| **[1.3]** transmit, to a server of the first set of server computers information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of the mobile phone, an identifier of a base station to which the mobile phone is communicatively coupled, or an identifier of a mobile network to which the mobile phone is communicatively coupled; | The Accused Products "transmit, to a server of the first set of server computers information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of the mobile phone, an identifier of a base station to which the mobile phone is communicatively coupled, or an identifier of a mobile network to which the mobile phone is communicatively coupled[.]"<br><br>Based on a review of the bytecode, the Accused Products transmit Wi-Fi information to their servers that include GPS coordinates that contain latitude and longitude, accuracy in meters, and altitude. The Accused Products send a list of Access Points (APs) that contain their MAC addresses, and SSIDs (Base Station Identifier) to their servers. On information and belief, the application code for iOS implementations functions similarly.<br><br>Moreover, the Accused Products leverage Google Location Services to locate the mobile device, and those services, as explained below, use cellular networks, Wi-Fi, and GPS to perform location checks.<br><br>*See* https://support.google.com/android/answer/3467281?sjid=5336235826517115621-NC#location_accuracy&zippy=%2Cwhen-location-accuracy-is-on.<br><br>In particular, the documentation states:<br><br>*When Location Accuracy is on, your device uses these sources to get the most accurate location, which may include elevation or floor level:*<br>    • *Wireless signals, if available, such as:*<br>        ○ *GPS*<br>        ○ *Wi-Fi*<br>        ○ *Mobile cellular networks*<br><br>On information and belief, this information is also transmitted to one or more servers. *See* https://support.google.com/android/answer/15157297?hl=en.<br><br>Moreover, based on a review of the bytecode, the Accused Products also send GPS data of the mobile device to one or more servers. This packet includes information containing GPS data including latitude, longitude, and altitude information. On information and belief, the application code for iOS implementations functions similarly. |

| | |
|---|---|
| | The Accused Products also send cellular information to one or more servers. The Accused Products send the following subset of cellular information to their servers:<br>• The cellular identifier (CID) which is a unique number used to identify each base transceiver station (BTS) or sector of a BTS within a location area code (LAC).<br>• The cellular mobile country code (MCC) and mobile network code (MNC) to uniquely identify the mobile network operator.<br>• The ASU signal strength (SS) technology-specific signal strength in Arbitrary Strength Units, calculated from the strength of the pilot signal or equivalent. |
| **[1.4]** receive, from a server of the second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined | The Accused Products "receive, from a server of the second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence[.]"<br><br>After the phone sends the Wi-Fi/GPS/cellular information as described in Claim Element 1.3 to its servers, based on a review of the bytecode, the servers provide information for whether the device is out of boundary for gambling or within boundary for allowed gambling. If out of boundary, the Accused Products will show the following error screen stating "Your device appears to be outside of the permitted area and therefore is ineligible to place a wager:" On information and belief, the application code for iOS implementations functions similarly. |

*U.S. Patent No. 12,397,226*

geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence;



(Android)    (iOS)

10

*U.S. Patent No. 12,397,226*



(Android)                                                                                                            (iOS)

11

If the device is within the boundary (*e.g.*, indicating that gambling is allowed), the following screen is shown which allows the user to make the bet where the bet button is green allowing the bet to be placed as shown below:



(Android)                                                                    (iOS)

12

| | |
|---|---|
| | The in-boundary/out-of-boundary determination is based on a defined geographical area that is a geofence. Specifically, based on a review of the bytecode, the Accused Products, in part, utilize the Google Play services GMS location API, including a fused location provider for providing geofencing and geographical area handling. This includes determining its location via GPS, cellular, and Wi-Fi as a fused source of locational data. On information and belief, the application code for iOS implementations functions similarly. As noted in the Google Android documentation found at https://developers.google.com/location-context/fused-location-provider, it states:<br><br>*The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.*<br>*The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service.*<br><br>Using the aforementioned APIs along with Android's Geofence API, the Accused Products also "repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device." Specifically, the Accused Products use Android's Geofence and GeofencingEvent objects, and receive Geofence events through a custom BroadcastReceiver implementation.  This is further explained in the Google Android documentation found at https://developer.android.com/develop/sensors-and-location/location/geofencing, which states that "*for each geofence, you can ask Location Services to send you entrance and exit events, or you can specify a duration within the geofence area to wait, or dwell, before triggering an event.*" The documentation additionally states, "*[a] BroadcastReceiver gets updates when an event occurs, such as a transition into or out of a geofence, and can start long-running background work.*" |
| **[1.5]** based on the indication, enable a user to submit a wager for a gambling event via the mobile phone; | The Accused Products, "based on the indication, enable a user to submit a wager for a gambling event via the mobile phone[.]"<br><br>Once the mobile device has been verified in an area that gambling is permitted as per the device's location and its permission, as described in Claim Elements 1.3 and 1.4, the Accused Products permit the user to submit a wager via the mobile phone as shown below: |



(Android)                                    (iOS)

| [1.6] after enabling the user: | The Accused Products "enabl[e] the user" after the user has successfully logged in to the application and has verified the user's location as shown in the following screenshot where the "Location Verified" green bubble is shown; |
|---|---|
| | <br>(Android)                                                    (iOS) |

15

*U.S. Patent No. 12,397,226*

| [1.7] receive, via the mobile phone, input from the user that specifies the wager for the gambling event; | The Accused Products then "receive, via the mobile phone, input from the user that specifies the wager for the gambling event[.]"<br><br>Once the Accused Products' user has been enabled, the application allows betting and input from the user as shown in the screen below. The red box shows where the user can input their wager:<br><br> <br>(Android)                                                                 (iOS) |

| [1.8] provide, to a server of the second set of server computers, details about the wager including an amount of the wager; | The Accused Products "provide, to a server of the second set of server computers, details about the wager including an amount of the wager." |
|---|---|
| | For example, the Accused Products allow the user to bet $0.75 on an NBA game or $10 on an MLB game, as shown below: |
| |      |
| | (Android)                                           (iOS) |

Based on a review of the bytecode, upon placing the bet, the Accused Products send the variable to their backend servers, as well as additional details about the wager that identify that specific bet, as well as where it was placed. On information and belief, the application code for iOS implementations functions similarly. While sending, it shows the following screen:



*U.S. Patent No. 12,397,226*

The server then accepts the bet and the Accused Products confirm the bet with the following screen:



(Android)                                                                                          (iOS)

19

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| **[1.9]** receive, from a server of the second set of server computers, an indication that the wager deviates from a wagering characteristic of the user that is based on prior wagers submitted by the user while the mobile phone is in the defined geographical area; and | The Accused Products "receive, from a server of the second set of server computers, an indication that the wager deviates from a wagering characteristic of the user that is based on prior wagers submitted by the user while the mobile phone is in the defined geographical area."<br><br>While the mobile phone is currently in a defined geographical area that allows betting, when making a wager, the Accused Products will inform the user that the odds may move and the bet "may move in and out of your favor before the bet is placed" as shown in the following screen:<br><br> |

20

The Accused Products continually receive odds, as well as maximum size bets, from their servers. When attempting to make a bet, the odds may change and the bet screen makes this evident and in the screen example below, the Accused Products state that the "[o]dds have decreased for your selection."



The Accused Products receive the odds and the maximum bet size from the Accused Products' servers. If the bet exceeds the maximum bet size, the Accused Products will not allow the bet and will inform the user that the wager exceeds the maximum, *e.g.*, "Max Wager $1,563.00" as shown below, which prevents the user from further submitting the wager:



22

The changes in the odds wagering characteristic are further evidenced in the following example during making a wager. The Accused Products show a .75 bet, the odds are expressed as -112 and the "To Win" bet is .67:



*U.S. Patent No. 12,397,226*

A few seconds later, the odds characteristic is updated to -120 and a "To Win" is changed to .62 as shown below:



*U.S. Patent No. 12,397,226*

| | |
|---|---|
| | The Accused Products allow the user to submit a further wager via the mobile phone based on the change in wagering characteristics, as shown above, if the user accepts the odds movement change.<br><br>Based on belief and information, the Accused Products change these based on a user's past wagering, and average win/loss rates with its service. *See* https://www.reddit.com/r/sportsbook/comments/1jbtoxj/fan_duel_offers_different_accounts_different_odds/ (demonstrating that two users were given different odds when placing bets at the exact same time).<br><br>The Accused Products also monitor whether a wager deviates from a wagering characteristic by monitoring a user's wagers for "inordinate frequency" or "unusual patterns." As per the Terms and Conditions of FanDuel Part 9, found at https://d38ayms4az88sz.cloudfront.net/SB/DC/2025-06-24T07-00-00.html#partA9, it states "9.1.1. Where there is an inordinate frequency and/or highly unusual pattern of Bets (by comparison with betting norms) placed on the same selection(s) in a short space of time." This is shown below:<br><br><br><br>9.1.1. Where there is an inordinate frequency and/or highly unusual pattern of Bets (by comparison with betting norms) placed on the same selection(s) in a short space of time; |
| **[1.10]** based on the indication that the wager deviates from the wagering characteristic and while the mobile phone is in the defined geographical area, | The Accused Products, "based on the indication that the wager deviates from the wagering characteristic and while the mobile phone is in the defined geographical area, prevent, by the application, the user from submitting further wagers via the mobile phone."<br><br>*See* Claim Element 1.9 where the Accused Products deviate from the wagering characteristic while in the defined geographical area and prevents the user from submitting further wagers via the mobile phone.<br><br>The Accused Products also monitor whether a wager deviates from a wagering characteristic by monitoring a user's wagers for "inordinate frequency" or "unusual patterns" and disallows the wager as a "suspicious bet:" |

25

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| prevent, by the application, the user from submitting further wagers via the mobile phone. |

https://d38ayms4az88sz.cloudfront.net/SB/DC/2025-06-24T07-00-00.html#partA9. |
| **[2]** The system of claim 1, wherein the indication that the mobile phone is in the defined geographical area | The Accused Products indicate "that the mobile phone is in the defined geographical area is further based on a signal strength associated with the mobile phone."

*See* Claim Element 1.3 whereby the mobile phone is in the defined geographical area and location determination is based on the signal strength associated with the mobile phone. |

26

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| is further based on a signal strength associated with the mobile phone. | |
| **[3]** The system of claim 1, wherein the wagering characteristic comprises an average volume of the prior wagers. | The Accused Products include functionality where the "wagering characteristic comprises an average volume of the prior wagers." <br><br> The Accused Products can change the wagering characteristic based upon previous bets. As per the Terms and Conditions of FanDuel Part 9, found at https://d38ayms4az88sz.cloudfront.net/SB/DC/2025-06-24T07-00-00.html#partA9, it states "9.1.1. Where there is an inordinate frequency and/or highly unusual pattern of Bets (by comparison with betting norms) placed on the same selection(s) in a short space of time." This is shown below: <br><br> <br><br> 9.1.1. Where there is an inordinate frequency and/or highly unusual pattern of Bets (by comparison with betting norms) placed on the same selection(s) in a short space of time; <br><br> In addition, based on belief and information, the Accused Products change the odds based on a user's past wagering experience, and average win/loss rates with its service. *See* https://www.reddit.com/r/sportsbook/comments/1jbtoxj/fan_duel_offers_different_accounts_different_odds/. |
| **[5]** The system of claim 1, wherein at least one of the indication that the mobile phone is in the defined | The Accused Products include "wherein at least one of the indication that the mobile phone is in the defined geographical area or the indication that the wager deviates from the wagering characteristic of the user is encrypted." <br><br> *See* Claim Element 1.9. |

27

| | |
|---|---|
| geographical area or the indication that the wager deviates from the wagering characteristic of the user is encrypted. | The Accused Products use HTTPS that is based on Secure Socket Layer encrypted communication between the mobile phone and the Accused Products' servers. SSL/TLS encryption secures internet communication by scrambling data into an unreadable format during transmission, protecting it from unauthorized access. This is achieved through a combination of asymmetric and symmetric encryption during an initial "handshake" process. The handshake establishes a secure connection by authenticating the server and negotiating encryption keys. |
| **[6.P]** A system, comprising | The Accused Products include "[a] system, comprising[.]"<br><br>*See* Claim Element 1.P. |
| **[6.1]** a first and second set of server computers; and | The Accused Products include "a first and second set of server computers[.]"<br><br>*See* Claim Element 1.1. |
| **[6.2]** an application configured for execution on a mobile phone, the application configured to: | The Accused Products include "an application configured for execution on a mobile phone[.]"<br><br>Specifically, the Accused Products run on Android and iOS mobile phones as described in Claim Element 1.2. |
| **[6.3]** transmit, to a server of the first set of server computers, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: | The Accused Products "transmit, to a server of the first set of server computers, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of the mobile phone or an indication of signal strength associated with the mobile phone[.]"<br><br>*See* Claim Element 1.3. |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| Global Positioning System (GPS) coordinates of the mobile phone or an indication of signal strength associated with the mobile phone; | |
| **[6.4]** receive, from a server of the second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined | The Accused Products "receive, from a server of the second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence[.]"  *See* Claim Element 1.3 and Claim Element 1.4. |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence; | |
| **[6.5]** based on the indication, enable a user to submit a wager for a gambling event via the mobile phone; | The Accused Products, "based on the indication, enable a user to submit a wager for a gambling event via the mobile phone[.]"<br><br>*See* Claim Element 1.5. |
| **[6.6]** after enabling the user: receive, via the mobile phone, input from the user that specifies the wager for the gambling event; | The Accused Products "after enabling the user: receive, via the mobile phone, input from the user that specifies the wager for the gambling event[.]"<br><br>*See* Claim Element 1.7. |
| **[6.7]** provide, to a server of the second set of server computers, details about the wager including an amount of the wager; | The Accused Products "provide, to a server of the second set of server computers, details about the wager including an amount of the wager[.]"<br><br>*See* Claim Element 1.8. |
| **[6.8]** receive, from a server of the second set of | The Accused Products "receive, from a server of the second set of server computers, an indication that the wager is in accordance with a wagering characteristic of prior wagers submitted by the user and while the mobile phone is in the defined geographical area[.]" |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| server computers, an indication that the wager is in accordance with a wagering characteristic of prior wagers submitted by the user and while the mobile phone is in the defined geographical area; and | *See* Claim Element 1.9. |
| **[6.9]** based on the indication that the wager is in accordance with the wagering characteristic and while the mobile phone is in the defined geographical area, allow, by the application, the user to submit a further wager via the mobile phone. | The Accused Products, "based on the indication that the wager is in accordance with the wagering characteristic and while the mobile phone is in the defined geographical area, allow, by the application, the user to submit a further wager via the mobile phone[.]" <br><br> *See* Claim Element 1.9. |
| **[7]** The system of claim 6, wherein the indication that the mobile phone is in the defined | The Accused Products indicate that "the mobile phone is in the defined geographical area is further based on at least one of: an identifier of a network component to which the mobile phone is communicatively coupled or an identifier of a mobile network to which the mobile phone is communicatively coupled." |

31

| | |
|---|---|
| geographical area is further based on at least one of: an identifier of a network component to which the mobile phone is communicatively coupled or an identifier of a mobile network to which the mobile phone is communicatively coupled. | The Accused Products send cellular phone data for location data to their servers, which helps define the geographical boundaries, which includes a mobile network identifier of the network component the mobile phone is connected to, as described in Claim Element 1.3. |
| **[8]** The system of claim 6, wherein the wagering characteristic comprises an average volume of the prior wagers. | The Accused Products "wagering characteristic comprises an average volume of the prior wagers."<br><br>The wagering characteristic changes based on the terms and conditions, previous wagers, volume, win/loss rates, and experience as described in Claim 3. |
| **[12]** The system of claim 6, wherein at least one of the indication that the mobile phone is in the defined geographical area or the indication | The Accused Products ensure "wherein at least one of the indication that the mobile phone is in the defined geographical area or the indication that the wager is in accordance with the wagering characteristic of the prior wagers submitted by the user is encrypted[.]"<br><br>*See* Claim Element 1.9 and Claim 5. |

| | |
|---|---|
| that the wager is in accordance with the wagering characteristic of the prior wagers submitted by the user is encrypted. | |
| **[13.P]** A system, comprising: | The Accused Products include "[a] system, comprising[.]" *See* Claim Element 1.P. |
| **[13.1]** means for receiving, from a mobile phone, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of the mobile phone or an indication of signal strength associated with the mobile phone; | The Accused Products include a "means for receiving, from a mobile phone, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of the mobile phone or an indication of signal strength associated with the mobile phone[.]" *See* Claim Element 1.3. |
| **[13.2]** means for determining that the mobile phone is in a defined | The Accused Products include a means for determining "that the mobile phone is in a defined geographical area in which gambling is permitted based on at least the information or whether the mobile phone is in a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, wherein the defined geographical area comprises the geo-fence[.]" |

33

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| geographical area in which gambling is permitted based on at least the information or whether the mobile phone is in a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, wherein the defined geographical area comprises the geo-fence; | *See* Claim Element 1.3 and Claim Element 1.4. |
| **[13.3]** means for providing, via a wireless network, an indication to the mobile phone that enables a user to submit a wager for a gambling event based on a determination that the mobile phone is in the defined | The Accused Products include a "means for providing, via a wireless network, an indication to the mobile phone that enables a user to submit a wager for a gambling event based on a determination that the mobile phone is in the defined geographical area[.]"<br><br>*See* Claim Element 1.4. |

34

| | |
|---|---|
| geographical area; | |
| **[13.4]** means for determining a wagering characteristic of the user that is based on prior wagers submitted by the user; | The Accused Products include a "means for determining a wagering characteristic of the user that is based on prior wagers submitted by the user[.]"<br><br>*See* Claim Element 1.9. |
| **[13.5]** means for receiving details about a wager, including an amount of the wager, submitted by the user for the gambling event via the mobile phone; | The Accused Products include a "means for receiving details about a wager, including an amount of the wager, submitted by the user for the gambling event via the mobile phone[.]"<br><br>*See* Claim Element 1.9. |
| **[13.6]** means for determining that the wager deviates from the wagering characteristic; and | The Accused Products include a "means for determining that the wager deviates from the wagering characteristic[.]"<br><br>*See* Claim Element 1.9. |
| **[13.7]** means for providing an indication, to the mobile phone in response to a determination that the wager | The Accused Products include a "means for providing an indication, to the mobile phone in response to a determination that the wager deviates from the wagering characteristic, that the wager deviates from the wagering characteristic, wherein the indication that the wager deviates from the wagering characteristic causes the mobile phone to prevent the user from making further wagers via the mobile phone while the user is in the defined geographical area."<br><br>*See* Claim Element 1.9 and Claim Element 1.10. |

35

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| deviates from the wagering characteristic, that the wager deviates from the wagering characteristic, wherein the indication that the wager deviates from the wagering characteristic causes the mobile phone to prevent the user from making further wagers via the mobile phone while the user is in the defined geographical area. | |
| **[14]** The system of claim 13, wherein the means for determining that the mobile phone is in the defined geographical area is further based on at least one of: an identifier of a | The Accused Products include "wherein the means for determining that the mobile phone is in the defined geographical area is further based on at least one of: an identifier of a base station to which the mobile phone is communicatively coupled or an identifier of a mobile network to which the mobile phone is communicatively coupled."<br><br>*See* Claim 7. |

| | |
|---|---|
| base station to which the mobile phone is communicatively coupled or an identifier of a mobile network to which the mobile phone is communicatively coupled. | |
| **[15]** The system of claim 14, further comprising: means for obtaining, from the mobile phone, an indication of the at least one of: the base station or the mobile network. | The Accused Products include a "means for obtaining, from the mobile phone, an indication of the at least one of: the base station or the mobile network."<br><br>*See* Claim 7. |
| **[16]** The system of claim 13, wherein the wagering characteristic comprises an average volume of the prior wagers. | The Accused Products include "wherein the wagering characteristic comprises an average volume of the prior wagers."<br><br>*See* Claim 3. |

37

| | |
|---|---|
| **[17]** The system of claim 13, wherein the wagering characteristic comprises a wagering performance of the user. | The Accused Products include "wherein the wagering characteristic comprises a wagering performance of the user."<br><br>*See* Claim 3. |
| **[18]** The system of claim 13, wherein the indication that enables the user to submit a wager for the gambling event is encrypted. | The Accused Products include "wherein the indication that enables the user to submit a wager for the gambling event is encrypted."<br><br>*See* Claim Element 1.5 and Claim 5 |
| **[19.P]** A method, comprising: | The Accused Products include "[a] method comprising[.]"<br><br>*See* Claim Element 1.P. The Accused Products include downloadable software in the form of mobile applications. These include the method of claim 19, as further explained below. |
| **[19.1]**: transmit, to a server of a first set of server computers, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: | The Accused Products "transmit, to a server of a first set of server computers, information including Wi-Fi data detected from one or more Wi-Fi transmitters and at least one of: Global Positioning System (GPS) coordinates of a mobile phone, an identifier of a network component to which the mobile phone is communicatively coupled, or an identifier of a mobile network to which the mobile phone is communicatively coupled[.]"<br><br>*See* Claim Element 1.3. |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| Global Positioning System (GPS) coordinates of a mobile phone, an identifier of a network component to which the mobile phone is communicatively coupled, or an identifier of a mobile network to which the mobile phone is communicatively coupled; | |
| **[19.2]** receiving, from a server of a second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo- | The Accused Products "receiv[e], from a server of a second set of server computers, an indication that the mobile phone is in a defined geographical area in which gambling is permitted, wherein the defined geographical area comprises a geo-fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence[.]"<br><br>*See* Claim Element 1.3 and Claim Element 1.4. |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| fence that is determined in part by one or more Wi-Fi transmitter coverage areas, and wherein the indication that the mobile phone is in the defined geographical area is based on at least one of: the information or whether the mobile phone is in the geo-fence; | |
| [19.3] based on the indication, enabling a user to submit a wager for a gambling event via the mobile phone; | The Accused Products use a method, comprising: "based on the indication, enabling a user to submit a wager for a gambling event via the mobile phone[.]"<br><br>*See* Claim Element 1.5. |
| [19.4] after enabling the user: receiving, via the mobile phone, input from the user that specifies the wager for the gambling event; | The Accused Products, "after enabling the user: receiv[e], via the mobile phone, input from the user that specifies the wager for the gambling event[.]"<br><br>*See* Claim Element 1.7. |
| [19.5] providing, to a server of the | The Accused Products use a method, comprising: "providing, to a server of the second set of server computers, details about the wager including an amount of the wager[.]" |

*U.S. Patent No. 12,397,226*

| | |
|---|---|
| second set of server computers, details about the wager including an amount of the wager; | *See* Claim Element 1.8. |
| **[19.6]** receiving, from a server of the second set of server computers, an indication that the wager is in accordance with a wagering characteristic of prior wagers submitted by the user while the mobile phone is in the defined geographical area; and | The Accused Products "receiv[e], from a server of the second set of server computers, an indication that the wager is in accordance with a wagering characteristic of prior wagers submitted by the user while the mobile phone is in the defined geographical area[.]"<br><br>*See* Claim Element 1.9. |
| **[19.7]** based on the indication that the wager is in accordance with the wagering characteristic and while the mobile phone is in the defined geographical area, allowing, by the | The Accused Products "based on the indication that the wager is in accordance with the wagering characteristic and while the mobile phone is in the defined geographical area, allowing, by the mobile phone, the user to submit a further wager via the mobile phone."<br><br>*See* Claim Element 1.9 and Claim Element 1.10. |

| | |
|---|---|
| mobile phone, the user to submit a further wager via the mobile phone. | |
| **[20]** The method of claim 19, wherein the indication that the mobile phone is in the defined geographical area is further based on an indication of signal strength associated with the mobile phone. | The Accused Products indicate "that the mobile phone is in the defined geographical area is further based on an indication of signal strength associated with the mobile phone." <br><br> *See* Claim 2. |
| **[21]** The method of claim 19, wherein the wagering characteristic comprises an average volume of the prior wagers. | The Accused Products include "wherein the wagering characteristic comprises an average volume of the prior wagers." <br><br> *See* Claim 3. |
| **[25]** The method of claim 19, wherein at least one of the indication that the mobile phone is in the defined geographical area | The Accused Products ensure "that the mobile phone is in the defined geographical area or the indication that the wager is in accordance with the wagering characteristic of the prior wagers submitted by the user is encrypted." <br><br> *See* Claim Element 1.4, Claim Element 1.9, and Claim 5. |

| | |
|---|---|
| or the indication that the wager is in accordance with the wagering characteristic of the prior wagers submitted by the user is encrypted. | |

**EXHIBIT 8**

*U.S. Patent No. 8,974,302*

**EXHIBIT 8**
**INITIAL INFRINGEMENT CLAIM CHART FOR U.S. PATENT NO. 8,974,302**

FanDuel infringes, directly and indirectly, at least claims 1–17, 19–24, 26, 28–40 of U.S. Patent No. 8,974,302 (the '302 patent). All of FanDuel's products allow gambling or betting, and are designed for Apple's iOS and Google's Android operating systems (the Accused Products), infringe literally and under the Doctrine of Equivalents, the '302 patent, including:

- FanDuel Sportsbook & Casino
- FanDuel Casino Real Money
- FanDuel Racing
- FanDuel Fantasy Sports
- FanDuel Picks

The following claim chart is representative and demonstrates how FanDuel Sportsbook & Casino directly infringes claims 1–17, 19–24, 26, 28–40 of the '302 patent. In addition to directly infringing, FanDuel also induces its customers to infringe by manufacturing and making available the Accused Products and contributorily infringes by offering for sale or selling the Accused Products, which are a material part of the invention of the '302 patent, in a manner in which they are made or adapted for use to infringe without any substantial non-infringing uses. For example, FanDuel induces its users how to infringe the '302 patent through the use of extensive support and frequently asked questions pages, available at https://support.fanduel.com/, training guides available at https://www.fanduel.com/training-guides, training videos available at YouTube.com (and other social media platforms), and within its mobile applications.

The information included in this chart is derived from publicly available sources, including screenshots of the Accused Products, Internet resources, and a review of the decompiled bytecode of the FanDuel Sportsbook & Casino application using the commercially available JEB Decompiler by PNF Software. The FanDuel Sportsbook & Casino application (APK), version 2.119.2, was obtained from the Google Play Store. Based on information available to Plaintiff at this time, including the aforementioned bytecode analysis, FanDuel Sportsbook & Casino is representative of all Accused Products, including both iOS and Android operating systems (OS), because it utilizes the same or similar backend servers, the GeoComply library, and allows for similar functionality for the user.

1

| Claim Element | Accused Products |
|---|---|
| **[1.P]** An apparatus comprising: | The Accused Products include "[a]n apparatus, comprising[.]"<br><br>Specifically, the Accused Products are designed to run on mobile devices and web-enabled devices. In particular, the apparatus is mobile devices, such as tablets and mobile phones that run both Android OS and Apple iOS and computers that run web browsers.<br><br><br><br>*See* https://www.fanduel.com/android. |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br><br>(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino) |

3

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| |  |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino) |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[1.A]** a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to: | The Accused Products execute on "a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to[.]"<br><br>As explained above, the Accused Products are designed to run on mobile devices and web-enabled devices. These devices include machine readable mediums (*e.g.*, non-volatile memory) that store the executable code for the Accused Products.<br><br><br><br>*See* https://www.fanduel.com/android. |

6

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | The Accused Products are also downloadable from the Google Play Store.<br><br><br><br>(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino) |

7

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | The Accused Products are also downloadable from the Apple App Store.<br><br> |

8

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino) |

9

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[1.B]** determine whether a mobile device is authorized to use a gaming service; | The Accused Products "determine whether a mobile device is authorized to use a gaming service[.]"<br><br>Specifically, the Accused Products make several determinations regarding whether a mobile device is authorized. This includes but is not limited to whether the device is plugged into a computer, whether the device is rooted, if developer options are enabled on the device, or if the application code has been tampered with. If any of these options is found to be true, the Accused Products display, for example as shown below, a message stating that it has found errors and provides the reasons. For example, if root is found, it will list that as one of the reasons (as shown in the red box below):<br><br> |

10

| Claim Element | Accused Products |
|---|---|
| | This is further confirmed from a review of the bytecode of the Accused Products. For example, there are at least 12 different methods that the Accused Products use to determine if a device is "rooted" or jailbroken. On information and belief, the application code for iOS implementations functions similarly.<br>The Accused Products also "determine whether a user of the mobile device is authorized to use the gaming service," for example, by determining whether the gaming application has been tampered with. Specifically, the Accused Products make use of a web service to validate if the application bytecode or binary has not been altered. On information and belief, the application code for iOS implementations functions similarly.<br><br>Finally, the Accused Products also "determine whether a user of the mobile device is authorized to use the gaming service" by confirming that "developer options" are not enabled and the device is not using the Android Debug Interface (ADB). If either the "developer options" are enabled and/or the device is connected to a computer via the Android Debug Interface and/or USB, then the following message is displayed: |

11

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| |  |

| Claim Element | Accused Products |
|---|---|
| **[1.C]** determine whether a user of the mobile device is authorized to use the gaming service; | The Accused Products "determine whether a user of the mobile device is authorized to use the gaming service[.]"<br><br>Specifically, the Accused Products require user authorization through a login screen in order to utilize any of the betting function. For example, upon selecting any function that allows betting in the application, the Accused Products display the following screen:<br><br> <br><br>(Android)                                        (iOS) |

13

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
|  | When the user selects the "Log in" button, the following screen is shown presenting a username and password input:<br><br><br>(Android)                                                                                          (iOS) |

14

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | If the user correctly enters a valid username/password combination, the Accused Products allow betting operations (assuming all of the other checks, such as location checks, are successful as well):<br><br><br><br>(Android)                                        (iOS) |

15

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[1.D]** to repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device; | The Accused Products "repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device[.]"<br><br>This element is met by several different mechanisms within the Accused Products. For example, throughout use of the application, a user may be repeatedly prompted to confirm or check their location in the event the location of the device cannot be determined or if the device is located in a geographical area that does not allow gambling. As a result of this explicit check, if the user is not within "a geographical area in which the user is allowed to engage in gaming activity," the following message is displayed: |

16

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| |  (Android)                                             (iOS) |

17

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | Otherwise, the user is allowed to proceed with gaming if the user is within a geographic area where they are allowed to engage in gaming activity.<br><br>In addition to the explicit checks, a review of the bytecode confirms that there are a number of location checks that occur without explicit user involvement. Specifically, the Accused Products, in part, utilize the Google Play services GMS location API, including a fused location provider for providing geofencing and geographical area handling. This includes determining its location via GPS, cellular, and Wi-Fi as a fused source of locational data. On information and belief, the application code for iOS implementations functions similarly. As noted in the Google Android documentation found at https://developers.google.com/location-context/fused-location-provider, it states:<br><br>*The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.*<br>*The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service.*<br><br>Using the aforementioned APIs along with Android's Geofence API, the Accused Products also "repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device." Specifically, the Accused Products use Android's Geofence and GeofencingEvent objects, and receive Geofence events through a custom BroadcastReceiver implementation. This is further explained in the Google Android documentation found at https://developer.android.com/develop/sensors-and-location/location/geofencing, which states that "*for each geofence, you can ask Location Services to send you entrance and exit events, or you can specify a duration within the geofence area to wait, or dwell, before triggering an event.*" The documentation additionally states, "*[a] BroadcastReceiver gets updates when an event occurs, such as a transition into or out of a geofence, and can start long-running background work.*" |

| | |
|---|---|
| **[1.E]** allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area; and | The Accused Products "allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area[.]"<br><br>The Accused Products detect if the user is authorized and logged in to allow or disallow gaming. If the user is not authorized, it will not allow that user to bet without first gaining authorization as shown in the following screen:<br><br>  <br><br>(Android)                                                                (iOS) |

19

If the user is appropriately authorized, the Accused Products allows betting as shown below:



(Android)                                                                 (iOS)

20

In the event the user is not in a geolocation that allows gaming, the Accused Products disallow gaming activities, as shown below:



(Android)                                                                          (iOS)

21

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[1.F]** determine a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area. | The Accused Products "determine a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area."<br><br>Based on a review of the bytecode, the Accused Products meet this element in at least two different ways:<br><br>First, the Accused Products make use of built-in functionality of the Android SDK to control the interval at which location is checked. This is controlled via configuration variable received from the associated backend servers of the Accused Products that makes calls to the Android SDK.<br>The Google Android SDK documentation found at https://developers.google.com/android/reference/com/google/android/gms/location/LocationRequest and https://developers.google.com/android/reference/com/google/android/gms/location/LocationRequest.Builder describes that this interval is "the desired interval of location updates[.]" Calls to the *setInterval* additionally is described as "*[s]ets the desired interval of location updates. Location updates may arrive faster than this interval (but no faster than specified by setMinUpdateIntervalMillis(long))*." The Google Android SDK documentation further describes the *setFastestInterval* as "*[s]ets the fastest allowed interval of location updates. Location updates may arrive faster than the desired interval (setIntervalMillis(long)), but will never arrive faster than specified here*."<br><br>This interval is adjusted by the Android OS based on how close a device is to a border.<br><br>Second, the Accused Products also adjust the interval at which location is checked within their custom implementation of Android Geofencing API. This interval changes based on how close the device is to a border. Specifically, the Accused Products receive a configuration from one or more associated backend servers that includes parameters that specifies how often location checks should be performed under different distances from a border. When the device's distance is very close to the border (*i.e.*, boundary), the location is checked more quickly. When the device's distance is a little further away from the border, the location is checked less regularly.<br><br>On information and belief, the application code for iOS implementations functions similarly. |

| Claim Element | Accused Products |
|---|---|
| | Indeed, this location checking is a requirement of the Accused Products because the Accused Products explicitly display an error message when they cannot determine a location of the device:  (Android)                                                    (iOS) |

23

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[2]** The apparatus of claim 1, in which the instructions are configured to cause the processor to: continue to allow the gaming activity in response determining that the mobile device remains within the gaming-allowed geographical area. | The Accused Products include "instructions [that] are configured to cause the processor to: continue to allow the gaming activity in response determining that the mobile device remains within the gaming-allowed geographical area." <br><br> *See* Claim Element 1.E. |
| **[3]** The apparatus of claim 1, in which the instructions are configured to cause the processor to: prevent the gaming activity in response to determining the mobile device is no longer within | The Accused Products are "configured to cause the processor to: prevent the gaming activity in response to determining the mobile device is no longer within the gaming-allowed geographical area." <br><br> *See* Claim Element 1.E. |

24

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| the gaming-allowed geographical area. | |
| **[4]** The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine whether the mobile device is authorized by determining whether a mobile telephone number of the mobile device has been signed up for the gaming service. | The Accused Products are "further configured to cause the processor to: determine whether the mobile device is authorized by determining whether a mobile telephone number of the mobile device has been signed up for the gaming service." <br><br> The Accused Products require the user to enter their mobile phone number on the signup screen: <br><br> |

25


*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| |  |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(iOS)          (iOS) |

27

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
| --- | --- |
|  | Additionally, the Accused Products also require a second factor six-digit code sent to the mobile phone number to continue access to the application after logging in:<br><br><br><br>(Android)                                                                                          (iOS) |

28

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | If a user fails to enter the six-digit code received on their mobile telephone, then they are unable to sign into the gaming service. On the other hand, if the six-digit code received by their mobile telephone number is verified, then they are authorized to sign into the service. In at least this way, the Accused Products "determin[e] whether a mobile telephone number of the mobile device has been signed up for the gaming service." |
| **[5]** The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine whether the user is authorized based at least in part on authenticating a login and password. | The Accused Products include "instructions [that] are further configured to cause the processor to: determine whether the user is authorized based at least in part on authenticating a login and password."<br><br>The Accused Products require a login to access the application. That login requires a valid email/user ID and password to access the application as shown in the following screen: |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Android)                                                                                (iOS) |

30

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[6]** The apparatus of claim 1, in which the instructions are further configured to cause a processor to: determining whether the mobile device is located within or without the gaming-allowed geographical area by querying a geofencing service. | The Accused Products include "instructions [that] are further configured to cause a processor to: determin[e] whether the mobile device is located within or without the gaming-allowed geographical area by querying a geofencing service."<br><br>The Accused Products prevent the mobile device from allowing gaming and/or depositing funds based on geofences.<br><br>Specifically, when the mobile device is outside of the allowed geographical area, the application will display the following screen upon logging in or attempting to bet when the application is verifying location, explaining "[y]our device appears to be outside of the permitted area and therefore is ineligible to place a wager": |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Android) (iOS) |

32

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | As explained above, a review of the bytecode confirms that this determination is made, in part, based on querying the Android Geofencing service. On information and belief, the application code for iOS implementations functions similarly. |
| [7] The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine whether an operating system of the mobile device is authorized to use the gaming service. | The Accused Products include "instructions [that] are further configured to cause the processor to: determine whether an operating system of the mobile device is authorized to use the gaming service."<br><br>Specifically, a review of the bytecode confirms the Accused Products determine if the device is running an unauthorized operating system in a number of ways. For example, the device's operating system is checked to ensure that it is not emulated or executing in a virtual environment, including other checks. On information and belief, the application code for iOS implementations functions similarly.<br><br>Additionally, on information and belief, the operating system version is additionally checked by the Accused Products' associated backend servers. |
| [8] The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine the inter-repetition period of time by | The Accused Products "determine the inter-repetition period of time by determining a period of time that is larger when the distance is larger and smaller when the distance is smaller."<br><br>*See* Claim Element 1.F. |

| Claim Element | Accused Products |
|---|---|
| determining a period of time that is larger when the distance is larger and smaller when the distance is smaller. | |
| **[9]** The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine the inter-repetition period of time by determining a period of time that is proportional to the distance to the boundary. | The Accused Products "determine the inter-repetition period of time by determining a period of time that is proportional to the distance to the boundary." <br><br> *See* Claim Element 1.F. |
| **[10]** The apparatus of claim 1, in which the instructions are further | The Accused Products "determine the inter-repetition period of time by determining the period of time based at least in part on a speed of travel of the mobile device and the distance to the boundary." <br><br> For example, the Accused Products use "speed of travel" to confirm a device has not been moved in an impossible manner. Specifically, based on review of the bytecode, the Accused Products compare the current location to a |

| Claim Element | Accused Products |
|---|---|
| configured to cause the processor to: determine the inter-repetition period of time by determining the period of time based at least in part on a speed of travel of the mobile device and the distance to the boundary. | previous/cached location, and determine whether the difference in time between the two locations is too rapid (*e.g.*, the device has moved to a different location too fast for it to be physically possible). On information and belief, the application code for iOS implementations functions similarly. On information and belief, the Accused Products check whether your device has moved faster than physically possible, and if that determination occurs, it shows the following screen:<br><br> <br>(Android)                                                          (iOS) |

35

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[11]** The apparatus of claim 10, in which the instructions are further configured to cause the processor to: determine the inter-repetition period of time by determining a period of time that is proportional to the speed of travel of the mobile device and the distance to the boundary. | The Accused Products "determine the inter-repetition period of time by determining a period of time that is proportional to the speed of travel of the mobile device and the distance to the boundary." *See* Claim 10. |
| **[12]** The apparatus of claim 10, in which the instructions are configured to cause the processor to: determine a speed of travel | The Accused Products "determine a speed of travel of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device." *See* Claim 10. |

36

| Claim Element | Accused Products |
|---|---|
| of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device. | |
| **[13]** The apparatus of claim 10, in which the instructions are further configured to cause the processor to: determine the inter-repetition period of time by determining the period of time based at least in part on the speed of travel of the mobile device, the distance, and a direction of travel of the mobile device. | The Accused Products "determine the inter-repetition period of time by determining the period of time based at least in part on the speed of travel of the mobile device, the distance, and a direction of travel of the mobile device." <br><br> *See* Claim 10. |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[14]** The apparatus of claim 13, in which the instructions are configured to cause the processor to: determine a direction of travel of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device. | The Accused Products "configured to cause the processor to: determine a direction of travel of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device."<br><br>For example, based on a review of the bytecode, the Accused Products retrieve bearings using the Android Location API from at least two location checks to confirm they are equivalent. On information and belief, the application code for iOS implementations functions similarly. |
| **[15]** The apparatus of claim 13, in which the direction includes a direction relative to the direction of travel of the mobile device. | The Accused Products include functionality in which the "direction includes a direction relative to the direction of travel of the mobile device."<br><br>*See* Claim 14. |

38

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| [16] The apparatus of claim 1, in which the instructions are further configured to cause the processor to: determine the inter-repetition period of time to be greater when the boundary includes a boundary of a state than when the boundary includes a boundary within a state. | The Accused Products include instructions that "cause the processor to: determine the inter-repetition period of time to be greater when the boundary includes a boundary of a state than when the boundary includes a boundary within a state." <br><br> *See* Claim Element 1.F. |
| [17] The apparatus of claim 1, in which the boundary includes a boundary of a geofence. | The Accused Products evaluate a "boundary [that] includes a boundary of a geofence." <br><br> As explained above, based on a review of the bytecode, the Accused Products leverage, in part, the Android Geofence API for Geofence boundaries.  As part of this process, the Accused Products build a list of multiple geofences. This list of Geofences, which each have their own respective radiuses (and thus borders), collectively represent a larger border. On information and belief, the application code for iOS implementations functions similarly. |
| [19] The apparatus of claim 1, the gaming service | The Accused Products "determine whether the mobile device is authorized to use the gaming service based at least in part on a determination whether an identity of the mobile device that the mobile device itself is authorized to use the gaming service." |

39

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| being further configured to: determine whether the mobile device is authorized to use the gaming service based at least in part on a determination whether an identity of the mobile device that the mobile device itself is authorized to use the gaming service. | *See* Claim Element 1.C and Claim 4. |
| [20] The apparatus of claim 1, the gaming service being further configured to: determine whether the mobile device is authorized based at least in part on determining whether a mobile | The Accused Products "determine whether the mobile device is authorized based at least in part on determining whether a mobile telephone number of the device has been signed up for the gaming service." *See* Claim 4. |

| Claim Element | Accused Products |
|---|---|
| telephone number of the device has been signed up for the gaming service. | |
| **[21]** The apparatus of claim 1, in which: the boundary of the gaming-allowed geographical area is, at least in part, established by factors other than a transmission boundary of a transmission base station. | The Accused Products "boundary of the gaming-allowed geographical area is, at least in part, established by factors other than a transmission boundary of a transmission base station." <br><br> As explained above, the Accused Products uses the Android Geofence API for Geofence boundaries, which is internal to the device and is not associated with the transmission boundary of a transmission base station. The Accused Products build a list of geofences using the Android SDK function calls. And as explained above, the boundary of a Geofence is its radius, not a transmission boundary of a transmission base station. |
| **[22.P]** An apparatus comprising: | The Accused Products include "[a]n apparatus comprising[.]" <br><br> *See* Claim Element 1.P. |
| **[22.A]** a mobile device configured to transmit gaming requests to a gaming service, communicate through a | The Accused Products include "a mobile device configured to transmit gaming requests to a gaming service, communicate through a communication service, and provide a user interface to a customer[.]" <br><br> *See* Claim Element 1.C. |

| Claim Element | Accused Products |
|---|---|
| communication service, and provide a user interface to a customer; and | |
| **[22.B]** the gaming service, in which the gaming service is configured to: | The Accused Products include "the gaming service, in which the gaming service is configured to[.]"<br><br>*See* Claim Element 1.C. |
| **[22.C]** determine whether the mobile device is authorized to use the gaming service; | The Accused Products "determine whether the mobile device is authorized to use the gaming service[.]"<br><br>*See* Claim Element 1.C. |
| **[22.D]** determine whether the customer is authorized to use the gaming service; to repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in | The Accused Products "determine whether the customer is authorized to use the gaming service; to repeatedly: determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device[.]"<br><br>*See* Claim Element 1.D. |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| gaming activity on the mobile device; | |
| **[22.E]** allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area; and | The Accused Products "allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area[.]"<br><br>*See* Claim Element 1.E. |
| **[22.F]** determine a period of time to elapse until the next repetition of | The Accused Products "determine a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area."<br><br>*See* Claim Element 1.F. |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area. | |
| **[23]** The apparatus of claim 22, the gaming service being further configured to: determine whether an operating system of the mobile device is authorized to use | The Accused Products "determine whether an operating system of the mobile device is authorized to use the gaming service." <br><br> *See* Claim 7. |

44

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| the gaming service. | |
| **[24]** The apparatus of claim 22, in which the mobile device includes a cellular telephone and the communication service includes a cellular phone service. | The Accused Products use a "mobile device [that] includes a cellular telephone and the communication service includes a cellular phone service."<br><br>Specifically, the Accused Products are designed, in part, to run on Android OS and iOS devices, which includes cellular phones connected to cellular phone services. *See* https://support.fanduel.com/s/article/Location-Troubleshooting-Tips as shown below:<br><br>**Android app or browser**<br>*Note: Settings and menus may vary by device. Check your device's support center for more details.*<br><br>1. Open your device's Settings app and tap **Connections** and then **Wi-Fi**. Toggle **Wi-Fi** on and make sure you're connected.<br><br>2. In your device's Settings app, tap **Connections** and then **SIM Manager** (or **Mobile network**). Toggle **Data Roaming** on.<br><br>3. Enable high accuracy location services on your device. Learn how to change your device's location accuracy settings.<br><br>4. Disable any Remote Desktop Program (RDP) and/or Virtual Private Network (VPN) software that restricts or masks your location. |

45

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | **Share your location**<br><br>**iOS app or browser**<br>1. Open your device's Settings app and tap **Wi-Fi.** Toggle **Wi-Fi** on and make sure you're connected.<br><br>2. In the Settings app, tap **Cellular.** Toggle **Cellular Data** on.<br><br>3. In the Settings app, tap **Privacy & Security**, and then tap **Location Services.** Make sure **Location Services** is toggled on.<br><br>4. While in **Location Services**, scroll down to the FanDuel app you're using and make sure **While Using the App** has a checkmark and **Precise Location** is toggled on:<br><br>‹ Back    FanDuel<br><br>ALLOW LOCATION ACCESS<br><br>Never<br><br>Ask Next Time Or When I Share<br><br>While Using the App    ✓<br><br>Always<br><br>App explanation: "Required to add account funds or enter paid contests."<br><br>Precise Location<br><br>Allows apps to use your specific location. With this setting off, apps can only determine your approximate location. |
| **[26]** The apparatus of claim 1, wherein the instructions | The Accused Products are "further configured to cause the processor to: receive a unique session identifier."<br><br>For example, based on a review of the bytecode, the Accused Products received a unique session identifier that identifies the user's sessions with one or more servers. |

| Claim Element | Accused Products |
|---|---|
| are further configured to cause the processor to: receive a unique session identifier. | Specifically, the Accused Products sends a POST request to https://api.fanduel.com/sessions with a login token, which returns a unique session ID. That unique session ID is then used in subsequent calls to the Accused Products' API servers as an X-Auth-Token header in the HTTP packet, which maintains and validates the session, as well as an Authorization: BASIC token. |
| **[28]** The apparatus of claim 26, wherein the determination of whether the user of the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: determine whether the unique session identifier is valid. | The Accused Products implement "wherein the determination of whether the user of the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: determine whether the unique session identifier is valid." For example, the Accused Products determine whether the unique session identifier is valid as part of every API call to the Accused Products' associated backend servers. On information and belief, this is at least in part to ensure that the user of the mobile device is authorized to use the gaming service. For example, as explained in Claim 26, the Accused Products send the token session identifier when it communicates with the Accused Products' associated backend servers. If the session is valid, the application will proceed normally. However, if the session identifier is not valid, the same request to the Accused Products' servers will return an error. This results in the following screen being displayed on the user's device requesting that the User Login, and displaying the following error message: |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Android)                                              (iOS) |

48

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[29]** The apparatus of claim 28, wherein the instructions are further configured to cause the processor to repeatedly determine whether the unique session identifier is valid. | The Accused Products "wherein the instructions are further configured to cause the processor to repeatedly determine whether the unique session identifier is valid."<br><br>As explained above for Claims 26 and 28, the Accused Products' associated backend servers confirm for every request that the unique session identifier is valid. In this way, the Accused Products "repeatedly determine whether the unique session identifier is valid." |
| **[30]** The apparatus of claim 1, wherein the determination of whether the user of the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: receive a | The Accused Products include "the gaming service [that] comprises instructions that cause the processor to: receive a username and password from the user; and check whether the username and password are valid."<br><br>*See* Claim Element 1.C. |

| Claim Element | Accused Products |
|---|---|
| username and password from the user; and check whether the username and password are valid. | |
| **[31]** The apparatus of claim 30, wherein the instructions are further configured to cause the processor to repeatedly check whether the username and password are valid. | The Accused Products include "instructions [that] are further configured to cause the processor to repeatedly check whether the username and password are valid."<br><br>Specifically, at periodic intervals and in response to a variety of specific events, the Accused Products will automatically log a user out and force them to reauthenticate.<br><br>For example, based on a review of the bytecode, the Accused Products will force users to reauthenticate periodically when numerous events occur, such as a player reaching a playing time limit, or if a forced logout occurs due to a deposit, if the environment changes, or if the user logs in to a different device, etc.<br><br>In at least this manner, the Accused Products "repeatedly check whether the username and password are valid." |
| **[32]** The apparatus of claim 28, wherein the instructions are further configured to cause the processor to receive the | The Accused Products include instructions "wherein the instructions are further configured to cause the processor to receive the unique session identifier in response to a determination that a username and password are valid."<br><br>*See* Claim 26. |

50

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| unique session identifier in response to a determination that a username and password are valid. | |
| **[33]** The apparatus of claim 26, wherein the unique session identifier includes a random number. | The Accused Products' "unique session identifier includes a random number."<br><br>On information and belief, the session identifier that is generated by the Accused Products uses a random number, such as in accordance with the Open Worldwide Application Security Project (OWASP) specification. *See* https://owasp.org/www-community/vulnerabilities/Insufficient_Session-ID_Length (stating that the session ID uses 64 bits of entropy). |
| **[34.A]** The apparatus of claim 1, wherein the determination of whether the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: | The Accused Products include functionality "wherein the determination of whether the mobile device is authorized to use the gaming service comprises instructions that cause the processor to[.]"<br><br>*See* Claim Element 1.A. |
| **[34.B]** access a list of | The Accused Products "access a list of applications installed on the mobile device[.]" |

51

| Claim Element | Accused Products |
|---|---|
| applications installed on the mobile device; | Specifically, if the device has any unauthorized applications on it, the following message is presented to the user:<br><br> |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | This indicates that a "list of applications installed on the mobile device" is accessed to determine if the "FakeGPS" application is installed.<br><br>This is also confirmed by a review of the bytecode. For example, the Accused Products specifically call an Android SDK function to generate a list of installed applications on the device. |
| [34.C] determine whether an application in the list of installed applications is disallowed from being installed; and | The Accused Products "determine whether an application in the list of installed applications is disallowed from being installed[.]"<br><br>Again, as shown above, if a disallowed application, such as FakeGPS, is installed on the device, the Accused Products prevent gaming and display the following message: |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
|  |  |

| Claim Element | Accused Products |
|---|---|
|  | Another example is if another type of application is installed on the device. If the Accused Products detect the application is installed, it will show the following screen:<br><br> |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | In this way, a "determin[ation] whether an application in the list of installed applications is disallowed from being installed" is made.<br><br>And a review of the bytecode confirms that the Accused Products determine whether an application is disallowed in the list of applications. For example, once the list of applications is obtained from the Android OS, that list is iterated to see if it contains any disallowed applications. On information and belief, the application code for iOS implementations functions similarly. |
| **[34.D]** disallow the user's gaming activity based on determining that at least one of the installed applications in the list of installed applications is disallowed from being installed. | The Accused Products "disallow the user's gaming activity based on determining that at least one of the installed applications in the list of installed applications is disallowed from being installed."<br><br>As explained above, if it is determined that at least one of the installed applications in the list of installed applications is disallowed (*e.g.*, FakeGPS), then gaming is disallowed, as shown in the following screen: |



57

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[35]** The apparatus of claim 34, wherein the determination of whether an application in the list of applications is disallowed from being installed comprises instructions that cause the processor to: determine whether the application is configured to enable remote access to the mobile device. | The Accused Products include functionality "wherein the determination of whether an application in the list of applications is disallowed from being installed comprises instructions that cause the processor to: determine whether the application is configured to enable remote access to the mobile device."<br><br>Specifically, if the device is connected to a computer with remote access (Android Debug Bridge) enabled, the following message is displayed: |

58



59

| Claim Element | Accused Products |
|---|---|
| **[36.A]** The apparatus of claim 34, wherein the instructions are further configured to cause the processor to, while the user is engaged in the gaming activity: | The Accused Products include "instructions [that] are further configured to cause the processor to, while the user is engaged in the gaming activity[.]"<br><br>As explained below, any time a user makes a bet in the Accused Products' applications, a number of checks are conducted to ensure the user and the device are authorized to place the bet. |
| **[36.B]** repeatedly access the list of applications; and | The Accused Products' "repeatedly access the list of applications[.]"<br><br>Based on a review of the bytecode, the Accused Products check the installed applications before allowing a bet. On information and belief, the application code for iOS implementations functions similarly.For example, when betting, the Accused Products will show the following screen: |

60



*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | At this point, if the user installed a prohibited application, such as FakeGPS. upon returning to the Accused Products' application, if the user presses the "Place [$] bet TO WIN [$]" button, the Accused Products will show the following screen:  |

62

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | Or the Accused Products may gray out the button that allows the user to place a bet, as shown below:<br><br> |

63

| Claim Element | Accused Products |
|---|---|
| | In this way, the Accused Products "repeatedly" (*e.g.*, any time the user places a bet) "access the list of applications" (*e.g.*, determine that disallowed applications, such as FakeGPS, are not installed).<br><br>*See also* Claim 34. |
| **[36.C]** repeatedly determine whether an application in the list of installed applications is disallowed from being installed. | The Accused products "repeatedly determine whether an application in the list of installed applications is disallowed from being installed."<br><br>*See* Claim Element 36.B and Claim 34. |
| **[37.A]** The apparatus of claim 1, wherein the determination of whether the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: access a list of running | The Accused Products include functionality "wherein the determination of whether the mobile device is authorized to use the gaming service comprises instructions that cause the processor to: access a list of running processes on the mobile device[.]"<br><br>Specifically, the Accused Products receive a list of at least 50 disallowed processes from their associated backend servers. These disallowed processes include processes that indicate a device is rooted or running in a virtual machine or emulator, etc.<br><br>Additionally, the Accused Products look for whether dynamic instrumentation processes are executing. This is a separate and distinct check from the processes listed above. Particularly the Accused Products search various Linux system mechanisms to identify these running processes.<br><br>Finally, the Accused Products also search for running unauthorized Java modules using Java-specific mechanisms. The following screen, which prevents gaming, is displayed if they device is running any disallowed processes: |

| | | |
|---|---|---|
| processes on the mobile device; |  | |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[37.B]** determine whether at least one of the running processes is disallowed; and | The Accused Products "determine whether at least one of the running processes is disallowed[.]"<br><br>*See* Claim Element 37.A. |
| **[37.C]** disallow the user's gaming activity based on determining that at least one of the running processes is disallowed. | The Accused Products "disallow the user's gaming activity based on determining that at least one of the running processes is disallowed."<br><br>The Accused Products will check the running processes when making a bet. For example, when betting, the Accused Products will show the following screen: |

66



| Claim Element | Accused Products |
|---|---|
| | At this point, if the user installed a prohibited application, such as HideMyApplist, upon returning to the Accused Products' application, if the user presses the "Place [$] bet TO WIN [$]" button, the Accused Products will show the following screen:  |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | Or the Accused Products may gray out the button that allows the user to place a bet, as shown below:<br><br><br><br>*See* Claim Element 37.A for list of processes that the Accused Products check for. |

69

| Claim Element | Accused Products |
|---|---|
| **[38.A]** The apparatus of claim 37, wherein the instructions are further configured to cause the processor to, while the user is engaged in the gaming activity: repeatedly access the list of running processes; and | The Accused Products include "instructions [that] are further configured to cause the processor to, while the user is engaged in the gaming activity [to] repeatedly access the list of running processes[.]"<br><br>The Accused Products will repeatedly check the running processes, including, but not limited to, when logging in and when making a bet. For example, when betting, the Accused Products will show the following screen:<br><br> |

| Claim Element | Accused Products |
|---|---|
| | When attempting to place a bet, the application will obtain the list of running processes from the code as shown in Claim 37.A. If, for example, a disallowed process, such as HideMyAppList, is running, then the Accused Products will display the following screen:<br><br> |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | Or the Accused Products may gray out the button that allows the user to place a bet, as shown below:<br><br> |

72

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[38.B]** repeatedly determine whether at least one of the running processes is disallowed. | The Accused Products "repeatedly determine whether at least one of the running processes is disallowed."<br><br>As explained above, the Accused Products repeatedly check for disallowed applications, and thus repeatedly "determine whether at least one of the running processes is disallowed."<br><br>*See also* Claim 37.A. |
| **[39.A]** The apparatus of claim 26, wherein the instructions are further configured to cause the processor to receive, from the user of the mobile device, a request to place a wager; | The Accused Products include instructions that "are further configured to cause the processor to receive, from the user of the mobile device, a request to place a wager[.]"<br><br>For example, as shown below, the Accused Products display screens for bets, and when the user determines the bet and amount, there is a button that the user can press to request to place the wager: |

73

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(Android)                                        (iOS) |

74

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| **[39.B]** determine whether the unique session identifier is valid in response to receiving the request to place a wager; and | The Accused Products "determine whether the unique session identifier is valid in response to receiving the request to place a wager[.]"<br><br>As explained above for Claim 26, the unique session identifier is sent through authorized subsequent communications to the Accused Products' associated backend servers. And if it's invalid, an error is received and no gaming, wagering, or depositing of funds is allowed. In at least this way, the Accused Products meet this element.<br><br>*See also* Claim 26. |
| **[39.C]** disallow the user from placing the wager in response to determining that the unique session identifier is invalid. | The Accused Products "disallow the user from placing the wager in response to determining that the unique session identifier is invalid."<br><br>As explained above for Claim 26, the unique session identifier is sent through authorized subsequent communications to the Accused Products' associated backend servers. And if it's invalid, an error is received and no gaming, wagering, or depositing of funds is allowed. In at least this way, the Accused Products meet this element.<br><br>*See* Claim 26. |
| **[40]** The apparatus of claim 1, wherein to determine whether the user of the mobile device is authorized to use the gaming service, the instructions are further configured to | The Accused Products include functionality "wherein to determine whether the user of the mobile device is authorized to use the gaming service, the instructions are further configured to cause the processor to: receive a username and a password, and determine whether the username and password are valid; receive information about the user of the mobile device, and compare the received information to stored information about the user in a database; determine whether an account associated with the user of the mobile device includes a threshold amount of money; or determine whether the user has reached an age that is eligible for wagering."<br><br>The Accused Products receive a username and password, and determine whether it is valid: |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| cause the processor to: receive a username and a password, and determine whether the username and password are valid; receive information about the user of the mobile device, and compare the received information to stored information about the user in a database; determine whether an account associated with the user of the mobile device includes a threshold amount of money; or | <br>(Android)    (iOS) |

76

| Claim Element | Accused Products |
|---|---|
| determine whether the user has reached an age that is eligible for wagering. | If an invalid username and password is submitted, it displays an "[i]nvalid username or password" message at the top of their screen as shown below:<br><br><br>(Android)                                                                                      (iOS) |

77

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | If a valid username and password are entered into the Accused Products application, it shows the application screen without any "Login" buttons, and the Account with a dollar amount of your wallet in the lower right corner:<br><br><br><br>(Android)                                                                 (iOS) |

78

| Claim Element | Accused Products |
|---|---|
| | The Accused Products also "receive information about the user of the mobile device, and compare the received information to stored information about the user in a database[.]"<br><br>For example, as shown below, personal information is collected about a user. On information and belief, this information is compared to information stored in a database, at least for the purposes of verifying the identity of the user to prevent fraud and ensure the user is of legal age to gamble.<br><br> |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(iOS) |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | The Accused products also "determine whether an account associated with the user of the mobile device includes a threshold amount of money[.]" <br><br> Specifically, the Accused Products contain information on a balance of the funds that have been deposited. For example, when accessing the account section of the Accused Products application, the user may press the "Withdraw" button and is shown the following screen that shows an availability to withdraw and how much the user wants to withdraw: <br><br> (Android)     (iOS) |

81

| Claim Element | Accused Products |
|---|---|
| | Upon entering an amount greater than an available or threshold amount, the following screen will be shown with a message stating that the "AMOUNT EXCEEDS YOUR CURRENT WITHDRAWLABLE BALANCE":  (Android)                                                                      (iOS) |

82

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
|  | The Accused Products also determine whether the user has reached an age that is eligible for wagering.<br><br>Specifically, the Accused Products require a birthdate, which is stored on its servers. This information can be seen when creating an account with the Accused Products application as shown below:<br><br> |

83

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | <br>(iOS) |

*U.S. Patent No. 8,974,302*

| Claim Element | Accused Products |
|---|---|
| | Finally, the Accused Products include in their bytecode a class and function for verifying the age of the user, and that functionality returns whether the user's age is allowed to gamble. On information and belief, the application code for iOS implementations functions similarly. |

**EXHIBIT 9**

*U.S. Patent No. 12,434,138*

**EXHIBIT 9**
**INITIAL INFRINGEMENT CLAIM CHART FOR U.S. PATENT NO. 12,434,138**

FanDuel infringes, directly and indirectly, at least claims 1–30 of U.S. Patent No. 12,434,138 (the '138 patent). All of FanDuel's products allow gambling or betting and are designed for Apple's iOS and Google's Android operating systems (the Accused Products), infringe literally and under the Doctrine of Equivalents, the '138 patent, including:

- FanDuel Sportsbook & Casino
- FanDuel Casino-Real Money
- FanDuel Racing
- FanDuel Fantasy Sports
- FanDuel Picks

The following claim chart is representative and demonstrates how FanDuel Sportsbook & Casino directly infringes claims 1–30 of the '138 patent. In addition to directly infringing, FanDuel also induces its customers to infringe by manufacturing and making available the Accused Products and contributorily infringes by offering for sale or selling the Accused Products, which are a material part of the invention of the '138 patent, in a manner in which they are made or adapted for use to infringe without any substantial non-infringing uses. For example, FanDuel induces its users how to infringe the '138 patent through the use of extensive support and frequently asked questions pages, available at https://support.fanduel.com/, training guides available at https://www.fanduel.com/training-guides, training videos available at YouTube.com (and other social media platforms), and within its mobile applications.

The information included in this chart is derived from publicly available sources, including screenshots of the Accused Products, Internet resources, and a review of the decompiled bytecode of the FanDuel Sportsbook & Casino application using the commercially available JEB Decompiler by PNF Software. The FanDuel Sportsbook application (APK), version 2.119.2, was obtained from the Google Play Store. Based on information available to Plaintiff at this time, including the aforementioned bytecode analysis, FanDuel Sportsbook & Casino is representative of all Accused Products, including both iOS and Android operating systems (OS), because it utilizes the same or similar backend servers, the GeoComply library and allows for similar functionality for the user.

1

*U.S. Patent No. 12,434,138*

| Claim Element | Accused Products |
|---|---|
| **[1.P]** A system, comprising: | The Accused Products include "a system, comprising[.]"<br><br>Specifically, the Accused Products provide a gambling platform that includes a mobile application/web frontend as well as backend servers working together:<br><br><br><br>(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino) |

2

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| | <br>(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino) |
| **[1.1.a.1]** one or more server computers, associated with | The Accused Products include "one or more server computers, associated with a gambling service, configured to[.]" |

3

| | |
|---|---|
| a gambling service, configured to: | The Accused Products use many servers that are associated with the gambling service. They are used both as primary and secondary. Some of these servers along with their correlated IP addresses used by the Accused Products include:<br><br>• api.fanduel.com (18.238.176.80)<br>• ips.sportsbook.fanduel.com (65.8.243.38)<br>• status.fanduel.com (18.154.101.117)<br>• bvp.sportsbook.fanduel.com (23.211.124.136)<br>• us7-es.geocomply.com (23.21.79.148) |
| **[1.1.b]** provide a user with access to the gambling service via a smart phone for a period of time; and | The Accused Products "provide a user with access to the gambling service via a smart phone for a period of time; and[.]"<br><br>Specifically, the Accused Products are designed to execute on mobile devices. The Accused Products, for example, run on an Android mobile phone: |



(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino)

The Accused Products are also supported on an Apple iOS platform:



(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino)

6

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| **[1.1.c.1]** during the period of time in which access to the gambling service is provided: | The Accused Products perform "during the period of time in which access to the gambling service is provided[.]"<br><br>As shown below, location checks occur repeatedly while gambling service is provided. |
| **[1.1.c.2]** determine, based on one or more first location checks of the smart phone performed at a first rate, that the smart phone is a first distance from a border of a U.S. state where gambling is allowed; and | The Accused Products "determine, based on one or more first location checks of the smart phone performed at a first rate, that the smart phone is a first distance from a border of a U.S. state where gambling is allowed; and[.]"<br><br>Based on a review of the bytecode, the Accused Products meet this element in at least two different ways:<br><br>First, the Accused Products make use of built-in functionality of the Android SDK to control the interval at which location is checked. This is controlled via configuration variable received from the associated backend servers of the Accused Products that makes calls to Android SDK.<br>The Android SDK documentation found at https://developers.google.com/android/reference/com/google/android/gms/location/LocationRequest and https://developers.google.com/android/reference/com/google/android/gms/location/LocationRequest.Builder describes that this interval is "the desired interval of location updates." Calls to the *setInterval* additionally are described as "*Sets the desired interval of location updates. Location updates may arrive faster than this interval (but no faster than specified by setMinUpdateIntervalMillis(long)).*" The Android SDK further describes the *setFastestInterval* as "*Sets the fastest allowed interval of location updates. Location updates may arrive faster than the desired interval (setIntervalMillis(long)), but will never arrive faster than specified here.*"<br><br>This interval is adjusted by the Android OS based on how close a device is to a border.<br><br>Second, the Accused Products also adjust the interval at which location is checked within their custom implementation of Android Geofencing API. This interval changes based on how close the device is to a border. Specifically, the Accused Products receive a configuration from one or more associated backend servers that includes parameters that specifies how often location checks should be performed under different distances from a border. When the device's distance is very close to the border (i.e. boundary), the location is checked more quickly. When the device's distance is a little further away from the border, the location is checked less regularly. |

7

On information and belief, the application code for iOS implementations functions similarly.

Indeed, this location checking is a requirement of the Accused Products because the Accused Products explicitly display an error message when they cannot determine a location of the device:





(Android)                                                                        (iOS)

| | |
|---|---|
| **[1.1.c.3]** determine, based on one or more second location checks of the smart phone performed at a second rate, that the smart phone is a second distance from the border of the U.S. state where gambling is allowed, wherein the second rate is different than the first rate; | The Accused Products "determine, based on one or more second location checks of the smart phone performed at a second rate, that the smart phone is a second distance from the border of the U.S. state where gambling is allowed, wherein the second rate is different than the first rate[.]"<br><br>*See* Claim Element 1.1.c.2 (explaining how there are different intervals for checking location). |
| **[1.1.d.1]** wherein, to determine the first distance and the second distance, the one or more server computers are configured to: | The Accused Products satisfy "wherein, to determine the first distance and the second distance, the one or more server computers are configured to[.]"<br><br>*See* Claim Element 1.1.c.2. |
| **[1.1.d.2]** obtain geographic location data from a wrapper | The Accused Products "obtain geographic location data from a wrapper executing on the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information, wherein the wrapper is associated with a gambling application installed on the smart phone and configured to |

9

| | |
|---|---|
| executing on the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information, wherein the wrapper is associated with a gambling application installed on the smart phone and configured to access the gambling service, and wherein at least a portion of the gambling application is written in a programming language different from the wrapper. | access the gambling service, and wherein at least a portion of the gambling application is written in a programming language different from the wrapper." <br><br> The Accused Products' gambling application is associated with a wrapper application (the Android Runtime/Dalvik Virtual Machine) that is executed on the mobile device. One of the core components of the gambling application is to obtain GPS, Wi-Fi signal, and/or cellular information in order to legally locate where the gambling application is being used. Because the wrapper application (i.e., Android Runtime/Dalvik VM) executes the gambling application, all of the operations performed by the gambling application, such as location checking are likewise executed via the wrapper application. <br><br> At least a portion of the wrapper application is written in a different programming language than the gambling application. For example, the Accused Products for the Android OS are Android applications that are executed by the Android Runtime or Dalvik Virtual Machine (a wrapper). https://source.android.com/docs/core/runtime. Moreover, on information and belief, the Accused Products also include cross-platform bytecode, include React, Xamarin, etc. Each of which is also executed by a Wrapper, such as the C# Virtual Machine or a browser. The Android Runtime and Dalvik Virtual Machines are written in C and/or C++. *See, e.g.,* https://android.googlesource.com/platform/art/+/refs/heads/main/runtime (showing the bytecode of the Android Runtime, and confirming it's written in C++). A review of the bytecode confirms that the Accused Products' gambling application is written in, for example, Java, Objective-C, React, or C#. On information and belief, the application code for iOS implementations functions similarly. <br><br> The Accused Products' gambling application (which in turn is executed by a wrapper, as explained above) also obtains geographic information such as GPS, Wi-Fi, and cellular information in a number of different ways. For example, throughout use of the application, a user may be repeatedly prompted to confirm or check their location in the event the location of the device cannot be determined or if the device is located in a geographical area that does not allow gambling. This check involves obtaining GPS coordinates of the mobile phone and collecting Wi-Fi and cellular information. <br><br> In addition to the explicit checks, a review of the bytecode confirms that there are a number of location checks that occur without explicit user involvement. Specifically, the Accused Products, in part, utilize the Google Play services GMS location API, including a fused location provider for providing geofencing and geographical area handling. This includes determining its location via GPS, cellular, and Wi-Fi as a fused source of locational data. On information and belief, the application code for iOS implementations functions similarly. As noted in the |

| | |
|---|---|
| | Google Android documentation found at https://developers.google.com/location-context/fused-location-provider, it states:<br><br>*The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.*<br>*The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service.*<br><br>Finally, a review of the bytecode confirms that GPS data is obtained from the phone, and sent to one or more servers. As part of the location checks described above, the Accused Products send an HTTP payload packet to one or more servers to determine whether the phone is in a location where gambling is permitted.  This packet includes information containing GPS data generated by the smartphone including latitude, longitude, bearing, speed, and altitude information in an XML field named "gps." On information and belief, the application code for iOS implementations functions similarly.<br>The Accused Products also similarly collect from the phone and send Wi-Fi information to one or more servers via an XML payload in order to determine a location and whether gambling is permitted in that location. The XML has a field named "wifi" with parameters such as latitude, longitude, altitude, accuracy, etc. In addition, it contains another field named "ap," which includes information such as the Wi-Fi access point's ssid, mac address, signal strength, frequency, etc.<br>And similar to the Wi-Fi information, the Accused Products also collect and send cellular information to one or more servers to determine the location of the mobile phone and whether gambling is permitted. The Accused Products send the following subset of cellular information to their servers:<br>&bull; The cellular identifier (CID) which is a unique number used to identify each base transceiver station (BTS) or sector of a BTS within a location area code (LAC).<br>&bull; The cellular mobile country code (MCC) and mobile network code (MNC) to uniquely identify the mobile network operator.<br>&bull; The ASU signal strength (SS) technology-specific signal strength in Arbitrary Strength Units, calculated from the strength of the pilot signal or equivalent. |
| **[2.1]** The system of claim 1, wherein the one or more server computers are | The Accused Products satisfy "the system of claim 1, wherein the one or more server computers are further configured to determine, based on the one or more first location checks, a traveling speed of the smart phone; and[.]" |

11

| | |
|---|---|
| further configured to determine, based on the one or more first location checks, a traveling speed of the smart phone; and | *See* Claim Element 1.1.d.2. The Accused Products, as part of location checking, explicitly collect, send, and determine using one or more servers, a "speed" parameter as part of its GPS collection and transmission. |
| **[2.2]** wherein the one or more server computers are configured to determine the second distance from the border of the U.S. state where gambling is allowed based at least on the determination that the smart phone is the first distance from the border of the U.S. state where gambling is allowed and the traveling speed of the smart phone. | The Accused Products satisfy "wherein the one or more server computers are configured to determine the second distance from the border of the U.S. state where gambling is allowed based at least on the determination that the smart phone is the first distance from the border of the U.S. state where gambling is allowed and the traveling speed of the smart phone." <br><br> The Accused Products send the speed to their servers as described as explained in Claim Element 1.1.d.2. In addition, as explained in Claim Element 1.1.c.2, the Accused Products also adjust their location checking interval based on a distance from a border—and thus, for example, "determine a second distance" as the phone transitions between different location checking intervals. On information and belief, the Accused Products' associated servers at least validate the speed parameter received from the mobile phone. And thus, for that reason alone, the "second distance" is determined at least based on the "traveling speed of the smart phone." |

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| **[3]** The system of claim 1, wherein the one or more server computers are further configured to determine, based on the one or more first location checks, a direction of travel of the smart phone; and wherein the one or more server computers are configured to determine the second distance from the border of the U.S. state where gambling is allowed based at least on the determination that the smart phone is the first distance from the border of the U.S. state where gambling is | The Accused Products satisfy "the system of claim 1, wherein the one or more server computers are further configured to determine, based on the one or more first location checks, a direction of travel of the smart phone; and wherein the one or more server computers are configured to determine the second distance from the border of the U.S. state where gambling is allowed based at least on the determination that the smart phone is the first distance from the border of the U.S. state where gambling is allowed and the direction of travel of the smart phone." <br><br> *See* Claim Element 1.1.c.2 (where the Accused Products send the bearing, or "direction of travel" of the mobile phone to help determine its location and distance to a border of a U.S. state). And similar to the "traveling speed" of Claim 2, on information and belief the "bearing" is also validated, and accordingly, the Accused Products perform this Claim for similar reasons. |

13

| | |
|---|---|
| allowed and the direction of travel of the smart phone. | |
| **[4]** The system of claim 3, wherein, to determine that the smart phone is the first distance from the border of the U.S. state where gambling is allowed, the one or more server computers are configured to: determine a shortest distance between the smart phone and the border of the U.S. state where gambling is allowed in a range of directions around the direction of travel of the smart phone. | The Accused Products satisfy "the system of claim 3, wherein, to determine that the smart phone is the first distance from the border of the U.S. state where gambling is allowed, the one or more server computers are configured to: determine a shortest distance between the smart phone and the border of the U.S. state where gambling is allowed in a range of directions around the direction of travel of the smart phone."<br><br>Based on information and belief, and review of the bytecode, the Accused Products' servers return a set of GPS geofence locations that are used to refer to borders and exit points for these geolocations. On information and belief, the Accused Products use the Haversine Formula to determine the distances between the geofences, which includes the border of a U.S. state where gambling is allowed or disallowed and determining the "shortest distance between the smart phone" and that "border[.]" On information and belief, the application code for iOS implementations functions similarly. |

14

| | |
|---|---|
| **[5.1]** The system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to: | The Accused Products satisfy "the system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to[.]"<br><br>*See* Claim Element 1.1.a.1. |
| **[5.2]** receive, from the wrapper executing on the smart phone, a list of applications installed on the smart phone and a list of processes executing on the smart phone; | The Accused Products "receive, from the wrapper executing on the smart phone, a list of applications installed on the smart phone and a list of processes executing on the smart phone[.]"<br><br>A review of the bytecode confirms, that the wrapper Android Runtime/Dalvik VM is instructed by the Accused Products to provide a list of applications installed on the smartphone. On information and belief, the application code for iOS implementations functions similarly.<br><br>Specifically, if the device has any unauthorized applications on it, the following message is presented to the user: |

15



*U.S. Patent No. 12,434,138*

| | |
|---|---|
| | This indicates that a "list of applications installed on the smart phone" is accessed to determine if the "FakeGPS" application is installed.<br><br>This is also confirmed by a review of the bytecode. For example, the Accused Products specifically call a function of the Android SDK to generate a list of installed applications on the device via a "wrapper" (i.e., the Android Runtime/Dalvik VM). On information and belief, the application code for iOS implementations functions similarly. |
| **[5.3]** determine that an operating system running on the smart phone has not been rooted based on the list of applications installed on the smart phone and the list of processes executing on the smart phone; and | The Accused Products "determine that an operating system running on the smart phone has not been rooted based on the list of applications installed on the smart phone and the list of processes executing on the smart phone[.]"<br><br>A review of the bytecode confirms that the Accused Products receive a list of applications from the device and check it against a list of applications received from their servers that signify that the operating system has been rooted. For example, the Accused Products check for magisk (one of the most popular rooting utilities), Fake GPS, Hide My Application, etc. On information and belief, the application code for iOS implementations functions similarly.<br><br>Additionally, the Accused Products look for whether dynamic instrumentation processes are executing. This is a separate and distinct check from the applications listed above. Particularly the Accused Products search various Linux system mechanisms to identify these running processes.<br><br>The Accused Products also receive a list of at least 50 disallowed processed from their associated backend servers. These processes include processes that indicate a device is root or running in a virtual machine or emulator, etc. |
| **[5.4]** provide the user with access to the gambling service via the smart phone for the period of time in response to at least the | The Accused Products "provide the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the operating system running on the smart phone has not been rooted."<br><br>The Accused Products repeatedly check for a rooted operating system during the gambling session. The operating system is checked as described in Claim Element 5.3. If the device is determined to not be rooted, gambling is permitted. Otherwise, the gambling is not permitted, and for example the following screen is shown to the user: |

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| determination that the operating system running on the smart phone has not been rooted. |  |
| [6.1] The system of claim 1, wherein, to provide the user with access to | The Accused Products satisfy "the system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to[.]"<br><br>*See* Claim Element 1.1.b. |

| | |
|---|---|
| the gambling service via the smart phone for the period of time, the one or more server computers are configured to: | |
| **[6.2]** determine that the smart phone is not being remotely accessed; and | The Accused Products "determine that the smart phone is not being remotely accessed[.]" <br><br> The Accused Products also repeatedly "determine that the smart phone is not being remotely accessed" by confirming that "developer options" are not enabled and the device is not using the Android Debug Interface (ADB).  ADB is a communication interface that allows the smart phone to be accessed remotely via a computer, either wirelessly or via a USB cable. If either the "developer options" are enabled and/or the device is connected to a computer via the Android Debug Interface and/or USB/Wi-Fi, then the following message is displayed: |



20

| **[6.3]** provide the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the smart phone is not being remotely accessed | The Accused Products "provide the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the smart phone is not being remotely accessed."<br><br>The Accused Products repeatedly check for whether the smart phone is being accessed remotely during the gambling session. The Accused Products check if the device is being remotely accessed as described in Claim Element 6.2.  If the Accused Products determine that the device is not being remote accessed, it allows the gaming as shown below: |

21

*U.S. Patent No. 12,434,138*



(Android)                                             (iOS)

Otherwise, gambling is not permitted, and the following message, for example, is displayed:



| [7] The system of claim 6, wherein to determine that the smart phone is not being remotely accessed, the one or more server computers are configured to: receive an indication that a WiFi connection of the smart phone is disabled, wherein the indication that a WiFi connection of the smart phone is disabled is determined by calling one of a WifiEnabled( ) function or a getWifiState( ) function of an operating system application | The Accused Products satisfy "the system of claim 6, wherein to determine that the smart phone is not being remotely accessed, the one or more server computers are configured to: receive an indication that a WiFi connection of the smart phone is disabled, wherein the indication that a WiFi connection of the smart phone is disabled is determined by calling one of a WifiEnabled() function or a getWifiState() function of an operating system application programming interface."<br><br>On information and belief, the Accused Products receive an indication that a WiFi connection is disabled by calling the Android SDK functions of WifiManager.getWifiState() or WifiManager.isWifiEnabled(). *See, e.g.,* https://developer.android.com/reference/android/net/wifi/WifiManager (describing each of the respective functions and how they can be used to determine whether WiFi is enabled/disabled). |
|---|---|

24

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| programming interface. | |
| **[8.1]** The system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to: | The Accused Products satisfy "the system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to[.]" *See* Claim Element 1.1.a.1. |
| **[8.2]** determine that the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling | The Accused Products "determine that the gambling application is unmodified from an approved version by comparing a signature of the gambling application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process[.]" On information and belief, the Accused Products utilize at least the Google Integrity API to verify that the application has not been tampered with. Google's documentation at https://support.google.com/googleplay/android-developer/answer/13857328?hl=en states: *Google Play's integrity and signing services help you ensure that users experience your apps and games in the way you intend. You can use the **App integrity** page (**Test and release** > **App integrity**) in Play Console to:* ... • *Set up automatic protection to prevent unauthorized modification and redistribution.* • *Set up Play app signing to allow Google Play to manage your app signing key and use it to sign each release* *Part of the application integrity is checking the software signature against a known value for being tampered with.* |

| | |
|---|---|
| application is generated using a multistage hashing process; and | Part of this integrity check includes generating a multi -tage hash to detect tampering.<br>On information and belief, the Accused Products also send a separate multi stage hash to their associated backend servers. |
| **[8.3]** provide the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the gambling application is unmodified from the approved version. | The Accused Products "provide the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the gambling application is unmodified from the approved version."<br><br>In the event the gambling application is unmodified as described in Claim Element 8.2, and it passes all other checks, it allows the user with access to the gambling service via the smart phone as shown below: |

26

*U.S. Patent No. 12,434,138*



(Android)                                                              (iOS)

27

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| | Otherwise, gambling is not allowed. |
| **[9.1]** The system of claim 1, wherein, to obtain the geographic location data from the smart phone, the one or more server computers are configured to: | The Accused Products satisfy "the system of claim 1, wherein, to obtain the geographic location data from the smart phone, the one or more server computers are configured to[.]"<br><br>*See* Claim Element 1.1.a.1. |
| **[9.2]** obtain information indicative of a set of wireless access points in proximity of the smart phone; and | The Accused Products "obtain information indicative of a set of wireless access points in proximity of the smart phone[.]"<br><br>The Accused Products use the Wi-Fi information and triangulate the location based on Wi-Fi AP location and signal strength from the multiple APs.<br><br>When the Accused Products utilize precise location accuracy, they use cell towers, Wi-Fi, and GPS to help triangulate the device's location as explained in the "Google Location Accuracy Is On" documentation as found at the following URL: https://support.google.com/android/answer/3467281?sjid=5336235826517115621-NC#location_accuracy&zippy=%2Cwhen-location-accuracy-is-on.<br><br>In particular, the documentation states:<br><br>*When Location Accuracy is on, your device uses these sources to get the most accurate location, which may include elevation or floor level:*<br>    • *Wireless signals, if available, such as:*<br>        ○ *GPS*<br>        ○ *Wi-Fi*<br>        ○ *Mobile cellular networks* |

*U.S. Patent No. 12,434,138*

On information and belief, the Accused Products use the Wi-Fi information and triangulate the location based on Wi-Fi AP location and signal strength from multiple APs to map at least the list of available Wi-Fi networks to a location. The Accused Products utilize the Wi-Fi networks along with other wireless signals and device sensor data to more accurately estimate the device location as explained in the Google "How Location Accuracy improves location" documentation as found at the following URL:
https://support.google.com/android/answer/15157297?hl=en.

Specifically, the documentation states:

> *Android devices with Google Play services have a Location Accuracy service (formerly Google Location Services). It uses information from wireless signals, such as Wi-Fi access points, cellular network towers, and GPS, along with device sensor data, such as accelerometer, barometer and gyroscope, to allow your device to more quickly and accurately estimate device location, particularly in areas where GPS may be unavailable or obscured, such as indoors or near large buildings.*

The documentation goes on to state that the Wi-Fi data is collected to build wireless signal locations:

> *Use Location Accuracy data without identifying specific individuals to build and maintain a crowdsourced database of wireless signal locations that Android devices use to help determine a more accurate device location.*

Based on a review of the bytecode, the Accused Products also transmit Wi-Fi information to their servers for the purposes of confirming location. Specifically, the Accused Products send Wi-Fi information to one or more servers via an XML payload in order to determine a location and whether gambling is permitted in that location. The XML has a field named "wifi" with parameters such as latitude, longitude, altitude, accuracy, etc. In addition, it contains another field named "ap," which includes information such as the Wi-Fi access point's ssid, mac address, signal strength, frequency, etc.  On information and belief, the application code for iOS implementations functions similarly.

Similar to the Wi-Fi information, the Accused Products also send cellular information to one or more servers to determine the location of the mobile phone and whether gambling is permitted. The Accused Products send the following subset of cellular information to their servers, which includes signal strength:

29

|  |  |
|---|---|
|  | - The cellular identifier (CID) which is a unique number used to identify each base transceiver station (BTS) or sector of a BTS within a location area code (LAC).<br>- The cellular mobile country code (MCC) and mobile network code (MNC) to uniquely identify the mobile network operator.<br>- The ASU signal strength (SS) technology-specific signal strength in Arbitrary Strength Units, calculated from the strength of the pilot signal or equivalent.<br><br>On information and belief and based on a review of the bytecode, the Accused Products' servers utilize this information to make a determination by examining the Wi-Fi access point signal strengths which is used to find its proximity to the Wi-Fi AP units. After this information is sent (along with other location information), the Accused Products use a request to these servers with the device's location and obtain a response that has an error message along with a token back to the device. On information and belief, the Accused Products (or their associated backend servers) decrypt the token and then provide instructions whether to allow access to the gambling service. On information and belief, the application code for iOS implementations functions similarly. |
| **[9.3]** obtain, for each wireless access point in the set of wireless access points, a signal strength between the wireless access point and the smart phone; and | The Accused Products "obtain, for each wireless access point in the set of wireless access points, a signal strength between the wireless access point and the smart phone[.]"<br><br>*See* Claim Element 9.2. |
| **[9.4.a]** wherein, to determine, based on the obtained geographic location data, that the smart | The Accused Products satisfy "wherein, to determine, based on the obtained geographic location data, that the smart phone is in the U.S. state where gambling is allowed, the one or more server computers are configured to[.]"<br><br>*See* Claim Element 9.2. |

| | |
|---|---|
| phone is in the U.S. state where gambling is allowed, the one or more server computers are configured to: | |
| **[9.4.b]** compare the obtained signal strengths to a set of approved signal strengths associated with the set of wireless access points. | The Accused Products "compare the obtained signal strengths to a set of approved signal strengths associated with the set of wireless access points." <br><br> The Accused Products send the signal strength to their servers as described in Claim Element 9.2. On information and belief, the Accused Products' associated backend servers use triangulation to determine the location of the phone based on the received XML information. In addition, on information and belief, the Wi-Fi signals are compared to thresholds to eliminate any access points where their signal is unreliable because it's too weak. |
| **[10.1]** The system of claim 1, wherein the one or more server computers are further configured to: during the period of time in which access to the gambling service is provided: | The Accused Products satisfy "the system of claim 1, wherein the one or more server computers are further configured to: during the period of time in which access to the gambling service is provided[.]" <br><br> *See* Claim Element 1.1.a.1. |
| **[10.2]** periodically | The Accused Products "periodically determine that an unapproved communication interface of the smart phone is disabled." |

31

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| determine that an unapproved communication interface of the smart phone is disabled. | *See* Claim Element 6.2. |
| **[11]** The system of claim 10, wherein the unapproved communication interface comprises one of: a Bluetooth interface; a Wi-Fi interface; or a docking port. | The Accused Products satisfy "wherein the unapproved communication interface comprises one of: a Bluetooth interface; a Wi-Fi interface; or a docking port." <br><br> *See* Claim Element 6.2. For example, ADB can be accessed via WiFi or USB. |
| **[12]** The system of claim 1, wherein the wrapper is an Android wrapper application, an AIR mobile gaming client, or an Apple application wrapper. | The Accused Products satisfy "the system of claim 1, wherein the wrapper is an Android wrapper application, an AIR mobile gaming client, or an Apple application wrapper." <br><br> *See* Claim Element 1.1.d.2. |
| **[13]** The system of claim 1, | The Accused Products satisfy "the system of claim 1, wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to: provide |

| | |
|---|---|
| wherein, to provide the user with access to the gambling service via the smart phone for the period of time, the one or more server computers are configured to: provide the user with access to the gambling service via the smart phone for the period of time based on a determination that a session identifier associated with the gambling service has not expired. | the user with access to the gambling service via the smart phone for the period of time based on a determination that a session identifier associated with the gambling service has not expired." <br><br> Based on a review of the bytecode, the Accused Products receive a session identifier that identifies the user's sessions with one or more servers. On information and belief, the application code for iOS implementations functions similarly. <br><br> Specifically, the Accused Products, as part of the initial authentication process, receive a unique session ID. That unique session ID is then used in subsequent calls to the Accused Products API servers. Based on information and belief, both the Accused Products' servers and application validate this session identifier and check whether the session has expired and ultimately will force the user to login again once the expiration has been passed. |
| **[14.1]** The system of claim 1, wherein, to obtain the geographic location data from the smart | The Accused Products satisfy "wherein, to obtain the geographic location data from the smart phone, the one or more server computers are configured to …[.] <br><br> *See* Claim Element 9.2. |

33

| | |
|---|---|
| phone, the one or more server computers are configured to: | |
| **[14.2]** obtain GPS coordinates of the smart phone; and | The Accused Products "obtain GPS coordinates of the smart phone[.]" <br><br> *See* Claim Element 2.1. |
| **[14.3]** obtain information indicative of a set of wireless access points in proximity of the smart phone; and | The Accused Products: "obtain information indicative of a set of wireless access points in proximity of the smart phone[.]" <br><br> *See* Claim Element 9.2. |
| **[14.4]** wherein, to determine, based on the obtained geographic location data, that the smart phone is in the U.S. state where gambling is allowed, the one or more server computers are configured to: compare, for a wireless access point in the set | The Accused Products satisfy "wherein to determine, based on the obtained geographic location data, that the smart phone is in the U.S. state where gambling is allowed, the one or more server computers are configured to: compare, for a wireless access point in the set of wireless access points, the GPS coordinates of the smart phone to a location corresponding to the wireless access point." <br><br> *See* Claim Elements 9.2 and 9.4.b. |

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| of wireless access points, the GPS coordinates of the smart phone to a location corresponding to the wireless access point. | |
| **[15.P]** A method, comprising: | The Accused Products perform "a method, comprising[.]"<br><br>*See* Claim Element 1.P. |
| **[15.1]** providing a user with access to a gambling service via a smart phone for a period of time; and | The Accused Products perform "providing a user with access to a gambling service via a smart phone for a period of time[.]"<br><br>*See* Claim Element 1.1.b. |
| **[15.2.a]** during the period of time in which access to the gambling service is provided: | The Accused Products perform "during the period of time in which access to the gambling service is provided[.]"<br><br>*See* Claim Element 1.1.c.1. |
| **[15.2.b]** determining, based on one or more first location checks of the smart | The Accused Products perform "determining, based on one or more first location checks of the smart phone performed at a first rate, that the smart phone is a first distance from a border of a location where gambling is allowed[.]"<br><br>*See* Claim Element 1.1.c.2. |

*U.S. Patent No. 12,434,138*

| | |
|---|---|
| phone performed at a first rate, that the smart phone is a first distance from a border of a location where gambling is allowed; and | |
| **[15.2.c]** determining, based on one or more second location checks of the smart phone performed at a second rate, that the smart phone is a second distance from the border of the location where gambling is allowed, wherein the second rate is different than the first rate; | The Accused Products perform "determining, based on one or more second location checks of the smart phone performed at a second rate, that the smart phone is a second distance from the border of the location where gambling is allowed, wherein the second rate is different than the first rate[.]" *See* Claim Element 1.1.c.3. |
| **[15.2.d.1]** wherein the first distance and the second distance | The Accused Products satisfy "wherein the first distance and the second distance are determined by[.]" *See* Claim Element 1.1.d.1. |

| | |
|---|---|
| are determined by: | |
| **[15.2.d.2]** obtaining geographic location data from a wrapper executing on the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information, wherein the wrapper is associated with a gambling application installed on the smart phone and configured to access the gambling service, and wherein at least a portion of the gambling application is | The Accused Products perform "obtaining geographic location data from a wrapper executing on the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information, wherein the wrapper is associated with a gambling application installed on the smart phone and configured to access the gambling service, and wherein at least a portion of the gambling application is written in a programming language different from the wrapper."<br><br>*See* Claim Element 1.1.d.2. |

| | |
|---|---|
| written in a programming language different from the wrapper. | |
| **[16]** The method of claim 15, wherein the location where gambling is allowed is one of: a U.S. state where gambling is allowed; or a geofenced area where gambling is allowed. | The Accused Products satisfy "the method of claim 15, wherein the location where gambling is allowed is one of: a U.S. state where gambling is allowed; or a geofenced area where gambling is allowed." <br><br> *See* Claim Element 2.1. |
| **[17.1]** The method of claim 15, further comprising: determining, based on the one or more first location checks, a traveling speed of the smart phone; | The Accused Products satisfy "the method of claim 15, further comprising: determining, based on the one or more first location checks, a traveling speed of the smart phone[.]" <br><br> *See* Claim Element 2.1. |
| **[17.2]** wherein the one or more second location checks are | The Accused Products satisfy "wherein the one or more second location checks are performed based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the traveling speed of the smart phone." |

| | |
|---|---|
| performed based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the traveling speed of the smart phone. | *See* Claim Element 2.2. |
| **[18.1]** The method of claim 15, further comprising: determining, based on the one or more first location checks, a direction of travel of the smart phone; | The Accused Products satisfy "the method of claim 15, further comprising: determining, based on the one or more first location checks, a direction of travel of the smart phone[.]"<br><br>*See* Claim 3. |
| **[18.2]** wherein the one or more second location checks are performed based at least on the determination that the smart | The Accused Products satisfy "wherein the one or more second location checks are performed based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the direction of travel of the smart phone."<br><br>*See* Claim 3. |

| | |
|---|---|
| phone is the first distance from the border of the location where gambling is allowed and the direction of travel of the smart phone. | |
| **[19]** The method of claim 18, wherein determining that the smart phone is the first distance from the border of the location where gambling is allowed comprises: determining a shortest distance between the smart phone and the border of the location where gambling is allowed in a range of directions around the direction of | The Accused Products satisfy "the method of claim 18, wherein determining that the smart phone is the first distance from the border of the location where gambling is allowed comprises: determining a shortest distance between the smart phone and the border of the location where gambling is allowed in a range of directions around the direction of travel of the smart phone." <br><br> *See* Claim 4. |

| | |
|---|---|
| travel of the smart phone. | |
| **[20.P]** The method of claim 15, wherein providing the user with access to the gambling service via the smart phone for the period of time includes: | The Accused Products satisfy "the method of claim 15, wherein providing the user with access to the gambling service via the smart phone for the period of time includes[.]"<br><br>*See* Claim Element 1.1.a.1. |
| **[20.1]** receiving, from the wrapper executing on the smart phone, a list of applications installed on the smart phone and a list of processes executing on the smart phone; | The Accused Products perform "receiving, from the wrapper executing on the smart phone, a list of applications installed on the smart phone and a list of processes executing on the smart phone[.]"<br><br>*See* Claim Element 5.2. |
| **[20.2]** determining that an operating system running on the smart phone has not been rooted based on the list | The Accused Products perform "determining that an operating system running on the smart phone has not been rooted based on the list of applications installed on the smart phone and the list of processes executing on the smart phone[.]"<br><br>*See* Claim Element 5.3. |

| | |
|---|---|
| of applications installed on the smart phone and the list of processes executing on the smart phone; and | |
| **[20.3]** in response to at least the determination that the operating system running on the smart phone has not been rooted, providing the user with access to the gambling service via the smart phone for the period of time. | The Accused Products perform "in response to at least the determination that the operating system running on the smart phone has not been rooted, providing the user with access to the gambling service via the smart phone for the period of time." <br><br> *See* Claim Element 5.3. |
| **[21.1]** The method of claim 15, wherein providing the user with access to the gambling service via the smart phone for | The Accused Products satisfy "the method of claim 15, wherein providing the user with access to the gambling service via the smart phone for the period of time includes[.]" <br><br> *See* Claim Element 1.1.b. |

| | |
|---|---|
| the period of time includes: | |
| **[21.2]** determining that the smart phone is not being remotely accessed; and | The Accused Products perform "determining that the smart phone is not being remotely accessed[.]"<br><br>*See* Claim Element 6.2. |
| **[21.3]** in response to at least the determination that the smart phone is not being remotely accessed, providing the user with access to the gambling service via the smart phone for the period of time. | The Accused Products perform "in response to at least the determination that the smart phone is not being remotely accessed, providing the user with access to the gambling service via the smart phone for the period of time."<br><br>*See* Claim Element 6.3. |
| **[22.1]** The method of claim 15, wherein providing the user with access to the gambling service via the smart phone for the period of time includes: | The Accused Products satisfy "the method of claim 15, wherein providing the user with access to the gambling service via the smart phone for the period of time includes: receiving a signature of an application associated with the gambling service[.]"<br><br>*See* Claim Element 1.1.a.1. |

| | |
|---|---|
| receiving a signature of the gambling application; | |
| **[22.2]** determining that the gambling application is unmodified from an approved version by comparing the signature of the gambling application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process; and | The Accused Products perform "determining that the gambling application is unmodified from an approved version by comparing a signature of the application to an approved application signature, wherein the signature of the gambling application is generated using a multistage hashing process[.]" <br><br> *See* Claim Element 8.2. |
| **[22.3]** in response to at least the determination that the gambling | The Accused Products perform "in response to at least the determination that the gambling application is unmodified from the approved version, providing the user with access to the gambling service via the smart phone for the period of time." <br><br> *See* Claim Element 8.3. |

| | |
|---|---|
| application is unmodified from the approved version, providing the user with access to the gambling service via the smart phone for the period of time. | |
| **[23.1]** The method of claim 15, wherein obtaining the geographic location data from the smart phone includes: obtaining information indicative of a set of wireless access points in proximity of the smart phone; and | The Accused Products satisfy "the method of claim 15, wherein obtaining the geographic location data from the smart phone includes: obtaining information indicative of a set of wireless access points in proximity of the smart phone[.]"<br><br>*See* Claim Elements 1.1.a.1 and 9.2. |
| **[23.2]** obtaining, for each wireless access point in the set | The Accused Products perform "obtaining, for each wireless access point in the set of wireless access points, a signal strength between the wireless access point and the smart phone[.]"<br><br>*See* Claim Element 9.2. |

45

| | |
|---|---|
| of wireless access points, a signal strength between the wireless access point and the smart phone; and | |
| **[23.3]** wherein determining, based on the obtained geographic location data, that the smart phone is in the location where gambling is allowed comprises: comparing the obtained signal strengths to a set of approved signal strengths associated with the set of wireless access points. | The Accused Products satisfy "wherein determining, based on the obtained geographic location data, that the smart phone is in the location where gambling is allowed comprises: comparing the obtained signal strengths to a set of approved signal strengths associated with the set of wireless access points." <br><br> *See* Claim Elements 9.2 and 9.4.b. |
| **[24.1]** The method of claim 15, further comprising: | The Accused Products satisfy "the method of claim 15, further comprising: during the period of time in which access to the gambling service is provided[.]" <br><br> *See* Claim Element 1.1.a.1. |

| | |
|---|---|
| during the period of time in which access to the gambling service is provided: | |
| **[24.2]** periodically determining that an unapproved communication interface of the smart phone is disabled. | The Accused Products perform "periodically determining that an unapproved communication interface of the smart phone is disabled."<br><br>*See* Claim Element 6.2. |
| **[25.1]** The method of claim 15, wherein obtaining the geographic location data from the smart phone includes: | The Accused Products satisfy "the method of claim 15, wherein obtaining the geographic location data from the smart phone includes[.]"<br><br>*See* Claim Element 9.2. |
| **[25.2]** obtaining GPS coordinates of the smart phone; and | The Accused Products perform "obtaining GPS coordinates of the smart phone[.]"<br><br>*See* Claim Element 2.1. |
| **[25.3]** obtaining information indicative of a set of wireless access points in proximity of the | The Accused Products perform "obtaining information indicative of a set of wireless access points in proximity of the smart phone[.]"<br><br>*See* Claim Element 9.2. |

| | |
|---|---|
| smart phone; and | |
| **[25.4]** wherein determining, based on the obtained geographic location data, that the smart phone is in the location where gambling is allowed includes: comparing, for a wireless access point in the set of wireless access points, the GPS coordinates of the smart phone to a location corresponding to the wireless access point. | The Accused Products perform "wherein determining, based on the obtained geographic location data, that the smart phone is in the location where gambling is allowed includes: comparing, for a wireless access point in the set of wireless access points, the GPS coordinates of the smart phone to a location corresponding to the wireless access point." *See* Claim Elements 9.2 and 9.4.b. |
| **[26.P]** A system, comprising: | The Accused Products include "a system, comprising[.]" *See* Claim Element 1.P. |
| **[26.1]** means for providing a user with access to a gambling | The Accused Products include "means for providing a user with access to a gambling service via a smart phone for a period of time[.]" *See* Claim Element 1.1.b. |

| | |
|---|---|
| service via a smart phone for a period of time; | |
| **[26.2.a]** means for, during the period of time in which access to the gambling service is provided: | The Accused Products include "means for, during the period of time in which access to the gambling service is provided[.]" <br><br> *See* Claim Element 1.1.c.1. |
| **[26.2.b]** determining, based on one or more first location checks of the smart phone performed at a first rate, that the smart phone is a first distance from a border of a location where gambling is allowed; and | The Accused Products include means for "determining, based on one or more first location checks of the smart phone performed at a first rate, that the smart phone is a first distance from a border of a location where gambling is allowed[.]" <br><br> *See* Claim Element 1.1.c.2. |
| **[26.2.c]** determining, based on one or more second location checks of the smart phone performed at a | The Accused Products include means for "determining, based on one or more second location checks of the smart phone performed at a second rate, that the smart phone is a second distance from the border of the location where gambling is allowed, wherein the second rate is different than the first rate[.]" <br><br> *See* Claim Element 1.1.c.3. |

| | |
|---|---|
| second rate, that the smart phone is a second distance from the border of the location where gambling is allowed, wherein the second rate is different than the first rate; | |
| **[26.2.d]** determining the first location and the second location by: obtaining geographic location data from the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information. | The Accused Products include means for "determining the first location and the second location comprising by: obtaining geographic location data from the smart phone, wherein the geographic location data includes GPS information, WiFi signal information or cellular signal information." <br><br> *See* Claim Elements 1.1.d.1 and 1.1.d.2. |
| **[27.1]** The system of claim 26, further | The Accused Products satisfy "the system of claim 26, further comprising means for determining, based on the one or more first location checks, a traveling speed of the smart phone[.]" |

50

| comprising means for determining, based on the one or more first location checks a traveling speed of the smart phone; and | *See* Claim Element 2.1. |
|---|---|
| **[27.2]** wherein the means for determining the one or more second location checks comprises means for performing the one or more second location checks based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the traveling speed | The Accused Products satisfy "wherein the means for performing the one or more second location checks comprises means for performing the one or more second location checks based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the traveling speed of the smart phone." <br><br> *See* Claim Element 2.2. |

| | |
|---|---|
| of the smart phone. | |
| **[28.1]** The system of claim 26, further including means for determining, based on the one or more first location checks a direction of travel of the smart phone; and | The Accused Products satisfy "the system of claim 26, further comprises means for determining, based on the one or more first location checks, a direction of travel of the smart phone[.]"<br><br>*See* Claim 3. |
| **[28.2]** wherein the means for determining the one or more second location checks comprises means for performing the one or more second location checks based at least on the determination that the smart phone is the first distance from the border of the location where | The Accused Products satisfy "wherein the means for determining the one or more second location checks comprises means for performing the one or more second location checks based at least on the determination that the smart phone is the first distance from the border of the location where gambling is allowed and the direction of travel of the smart phone."<br><br>*See* Claim 3. |

| | |
|---|---|
| ambling is allowed and the direction of travel of the smart phone. | |
| **[29]** The system of claim 28, wherein the means for determining that the smart phone is the first distance from the border of the location where gambling is allowed comprises: means for determining a shortest distance between the smart phone and the border of the location where gambling is allowed in a range of directions around the direction of travel of the smart phone. | The Accused Products satisfy "the system of claim 28, wherein the means for determining that the smart phone is the first distance from the border of the location where gambling is allowed comprises: means for determining a shortest distance between the smart phone and the border of the location where gambling is allowed in a range of directions around the direction of travel of the smart phone."<br><br>*See* Claim 4. |

| [30.1] The system of claim 26, wherein the means for providing the user with access to the gambling service via the smart phone for the period of time includes: means for determining that the smart phone is not being remotely accessed; and | The Accused Products satisfy "the system of claim 26, wherein the means for providing the user with access to the gambling service via the smart phone for the period of time includes: means for determining that the smart phone is not being remotely accessed[.]"<br><br>*See* Claim Elements 1.1.b and 6.2. |
|---|---|
| [30.2] means for providing the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the smart phone is not being remotely accessed. | The Accused Products include "means for providing the user with access to the gambling service via the smart phone for the period of time in response to at least the determination that the smart phone is not being remotely accessed."<br><br>*See* Claim Element 6.3. |

**EXHIBIT 10**

*U.S. Patent No. 12,400,515*

**EXHIBIT 10**
**INITIAL INFRINGEMENT CLAIM CHART FOR U.S. PATENT NO. 12,400,515**

FanDuel infringes, directly and indirectly, at least claims 5–7, 13–15, 17–22, and 24–29 of U.S. Patent No. 12,400,515 (the '515 patent). All of FanDuel's products allow gambling or betting and are designed for Apple's iOS and Google Android operating systems (the Accused Products) infringe literally and under the Doctrine of Equivalents, the '515 patent, including:

- FanDuel Sportsbook & Casino
- FanDuel Casino-Real Money
- FanDuel Racing
- FanDuel Fantasy Sports
- FanDuel Picks

The following claim chart is representative and demonstrates how FanDuel Sportsbook & Casino directly infringes claims 5–7, 13–15, 17–22, and 24–29 of the '515 patent. In addition to directly infringing, FanDuel also induces its customers to infringe by manufacturing and making available the Accused Products and contributorily infringes by offering for sale or selling the Accused Products, which are a material part of the invention of the '515 patent, in a manner in which they are made or adapted for use to infringe without any substantial non-infringing uses. For example, FanDuel induces its users how to infringe the '515 patent through the use of extensive support and frequently asked questions pages, available at https://support.fanduel.com/, training guides available at https://www.fanduel.com/training-guides, training videos available at YouTube.com (and other social media platforms), and within its mobile applications.

The information included in this chart is derived from publicly available sources, including screenshots of the Accused Products, Internet resources, and a review of the decompiled bytecode of the FanDuel Sportsbook & Casino application using the commercially available JEB Decompiler by PNF Software. The FanDuel Sportsbook application (APK), version 2.119.2, was obtained from the Google Play Store. Based on information available to Plaintiff at this time, including the aforementioned bytecode analysis, FanDuel Sportsbook & Casino is representative of all Accused Products, including both iOS and Android operating systems (OS), because it utilizes the same or similar backend servers, the GeoComply library, and allows for similar functionality for the user.

1

*U.S. Patent No. 12,400,515*

| Claim Element | |
|---|---|
| **[1.P]** A method comprising: | The Accused Products include a "method comprising[.]" <br><br> Specifically, as described below and throughout this chart, the Accused Products include mobile applications with instructions and methods that are designed to run on mobile devices and web-enabled devices. <br><br>  <br> *See* https://www.fanduel.com/android. |

2



(Screenshot of Google Play Store entry for FanDuel Sportsbook & Casino).



(Screenshot of Apple App Store entry for FanDuel Sportsbook & Casino)

| | |
|---|---|
| **[1.1]** identifying a first game played by a user based on at least | The Accused Products identify a "first game played by a user based on at least one of an amount of time that the first game was played by the user or a number of times that the first game was played by the user[.]"<br><br>For example, the Accused Products list casino games as "For You" or "Recently Played." |

| | |
|---|---|
| one of an amount of time that the first game was played by the user or a number of times that the first game was played by the user; | <br><br>(Android)      <br><br>(iOS) |

Moreover, the Accused Products Privacy Policy explicitly states that information regarding game playing is collected and analyzed:

The personal information we collect from you generally may include:

2.1.1 your name;

2.1.2 email address;

2.1.3 date of birth;

2.1.4 PayPal or credit card billing information;

2.1.5 contacts you choose to submit;

2.1.6 profile photo;

2.1.7 username;

2.1.8 location;

2.1.9 your preferences;

2.1.10 submissions to various competitions and promotions;

2.1.11 responses to surveys;

2.1.12 communications sent to us by you;

2.1.13 your subscriptions to newsletters and services offered by us; and

2.1.14 any other information you submit to FanDuel when choosing to participate in various activities on the Services.

https://www.fanduel.com/privacy (annotated).

6

| | |
|---|---|
| | And the same privacy policy confirms that such information is explicitly used to "personalize the service," including alerting you to "products and services:"<br><br>**3. The Way FanDuel Uses Your Personal Information**<br><br>3.1 We use your personal information to operate, maintain, and provide to you the features and functionality of the Services, including but not limited to the following:<br><br>3.1.1 providing you with our products and services, including our games;<br><br>3.1.2 processing and responding to enquiries;<br><br>3.1.3 personalizing your use of the Services,<br><br>3.1.4 alerting you to new features, special events, products and services, or certain third-party products or services in which we think you will be interested;<br><br>https://www.fanduel.com/privacy.<br><br>A review of the bytecode also confirms that the "For You" and "Recently Played Games" features are related to a particular user. For example, the URL that the information that is displayed in those screen portions is retrieved via a URL that includes as a subpath "customisedPromotions:" On information and belief, the application code for iOS implementations functions similarly.<br><br>https://promos-api.casino.fanduel.com/api/customisedPromotions/retrieveStructured.<br><br>In addition, the Accused Products also keep track of play time, for example, the recommended games are sent from one or more servers in a JSON format, which is modified if a user accessed the game or enabled the promotion.<br><br>Accordingly, in view of all of this, on information and belief, the Accused Products identify a first game, such as one of the "For You" recommended casino games, based at least "one of an amount of time that the first game was played by the user or a number of times that the first game was played by the user." |
| **[1.2]** determining a second game that has a common characteristic | The Accused Products determine a "second game that has a common characteristic with the first game."<br><br>For example, the Accused Products list casino games as "For You" or "Recently Played." |

7

| with the first game; |  (Android)    (iOS) |

Moreover, the Accused Products Privacy Policy explicitly states that information regarding game playing is collected and analyzed:

The personal information we collect from you generally may include:

2.1.1 your name;

2.1.2 email address;

2.1.3 date of birth;

2.1.4 PayPal or credit card billing information;

2.1.5 contacts you choose to submit;

2.1.6 profile photo;

2.1.7 username;

2.1.8 location;

2.1.9 your preferences;

2.1.10 submissions to various competitions and promotions;

2.1.11 responses to surveys;

2.1.12 communications sent to us by you;

2.1.13 your subscriptions to newsletters and services offered by us; and

2.1.14 any other information you submit to FanDuel when choosing to participate in various activities on the Services.

https://www.fanduel.com/privacy (annotated).

*U.S. Patent No. 12,400,515*

| | |
|---|---|
| | And the same privacy policy confirms that such information is explicitly used to "personalize the service," including alerting you to "products and services:" |
| | **3. The Way FanDuel Uses Your Personal Information** |
| | 3.1 We use your personal information to operate, maintain, and provide to you the features and functionality of the Services, including but not limited to the following: |
| | 3.1.1 providing you with our products and services, including our games; |
| | 3.1.2 processing and responding to enquiries; |
| | 3.1.3 personalizing your use of the Services, |
| | 3.1.4 alerting you to new features, special events, products and services, or certain third-party products or services in which we think you will be interested; |
| | https://www.fanduel.com/privacy. |
| | A review of the bytecode also confirms that the "For You" and "Recently Played Games" features are related to a particular user. For example, the URL that the information that is displayed in those screen portions is retrieved via a URL that includes as a subpath "customisedPromotions:" On information and belief, the application code for iOS implementations functions similarly. |
| | https://promos-api.casino.fanduel.com/api/customisedPromotions/retrieveStructured. |
| | In addition, the Accused Products also keep track of play time, for example, the recommended games are sent from one or more servers in a JSON format, which is modified if a user accessed the game or enabled the promotion. |
| | Accordingly, in view of all of this, on information and belief, the Accused Products identify a second game that has a common characteristic to the first game, such as one of the "For You" recommended casino games. |
| **[1.3]** based on determining the second game that has the common characteristic with the first game and based | The Accused Products provide a "recommendation to play the second game to a mobile phone for display on the mobile phone" based on "determining the second game that has the common characteristic with the first game and based on a percentage increase in play of the second game by a plurality of people over a first period of time[.]" For example, the Accused Products list casino games as "For You" or "Recently Played." |

on a percentage increase in play of the second game by a plurality of people over a first period of time, providing a recommendation to play the second game to a mobile phone for display on the mobile phone;



(Android)          (iOS)

11

Moreover, the Accused Products Privacy Policy explicitly states that information regarding game playing is collected and analyzed:

The personal information we collect from you generally may include:

2.1.1 your name;

2.1.2 email address;

2.1.3 date of birth;

2.1.4 PayPal or credit card billing information;

2.1.5 contacts you choose to submit;

2.1.6 profile photo;

2.1.7 username;

2.1.8 location;

2.1.9 your preferences;

2.1.10 submissions to various competitions and promotions;

2.1.11 responses to surveys;

2.1.12 communications sent to us by you;

2.1.13 your subscriptions to newsletters and services offered by us; and

2.1.14 any other information you submit to FanDuel when choosing to participate in various activities on the Services.

https://www.fanduel.com/privacy (annotated).

12

*U.S. Patent No. 12,400,515*

| | |
|---|---|
| | And the same privacy policy confirms that such information is explicitly used to "personalize the service," including alerting you to "products and services:"<br><br>### 3. The Way FanDuel Uses Your Personal Information<br><br>3.1 We use your personal information to operate, maintain, and provide to you the features and functionality of the Services, including but not limited to the following:<br><br>3.1.1 providing you with our products and services, including our games;<br><br>3.1.2 processing and responding to enquiries;<br><br>3.1.3 personalizing your use of the Services,<br><br>3.1.4 alerting you to new features, special events, products and services, or certain third-party products or services in which we think you will be interested;<br><br>https://www.fanduel.com/privacy.<br><br>A review of the bytecode also confirms that the "For You" and "Recently Played Games" features are related to a particular user. For example, the URL that the information that is displayed in those screen portions is retrieved via a URL that includes as a subpath "customisedPromotions:" On information and belief, the application code for iOS implementations functions similarly.<br><br>https://promos-api.casino.fanduel.com/api/customisedPromotions/retrieveStructured.<br><br>In addition, the Accused Products also keep track of play time, for example, the recommended games are sent from one or more servers in a JSON format, which is modified if a user accessed the game or enabled the promotion.<br><br>Accordingly, on information and belief, based on the aforementioned information, the Accused Products recommend games and display such games to users based at least in part on a percentage increase in play of the second game by a plurality of people over a first period of time and a common characteristic with other games played by the user. This is at least in part because FanDuel concedes they keep track of all of this information, and explicitly states in their privacy policy that they recommend "products and services" based on such collected information. |
| **[1.4]** obtaining Global Positioning System (GPS) | The Accused Products obtain "Global Positioning System (GPS) coordinates of the mobile phone[.]"<br><br>This element is met by several different mechanisms within the Accused Products. For example, throughout use of the application, a user may be repeatedly prompted to confirm or check their location in the event the location |

13

| coordinates of the mobile phone; | of the device cannot be determined or if the device is located in a geographical area that does not allow gambling. This check involves obtaining GPS coordinates of the mobile phone.<br><br>In addition to the explicit checks, a review of the bytecode confirms that there are a number of location checks that occur without explicit user involvement. Specifically, the Accused Products, in part, utilize the Google Play services GMS location API, including a fused location provider for providing geofencing and geographical area handling. This includes determining its location via GPS, cellular, and Wi-Fi as a fused source of locational data. On information and belief, the application code for iOS implementations functions similarly. noted in the Google Android documentation found at https://developers.google.com/location-context/fused-location-provider, it states:<br><br>*The fused location provider is a location API in Google Play services that intelligently combines different signals to provide the location information that your app needs.*<br>*The fused location provider manages the underlying location technologies, such as GPS and Wi-Fi, and provides a simple API that you can use to specify the required quality of service.*<br><br>Finally, a review of the bytecode confirms that GPS data is obtained. As part of the location checks described above, the Accused Products send an HTTP payload packet to one or more servers in order to determine whether the phone is in a location where gambling is permitted. This packet includes GPS coordinates generated by the smartphone including latitude, longitude, altitude information, etc. in an XML field named "gps." On information and belief, the application code for iOS implementations functions similarly. |
| **[1.5]** determining that the mobile phone is in a defined geographical area in which gambling is permitted based on the GPS coordinates; and | The Accused Products determine "that the mobile phone is in a defined geographical area in which gambling is permitted based on the GPS coordinates[.]"<br><br>As a result of the checks described in claim 1.4, if the user is not within "a geographical area in which the user is allowed to engage in gaming activity," the following message is displayed: |

14

*U.S. Patent No. 12,400,515*



(Android)                                                                                      (iOS)

15

Or this screen may be displayed if trying to make a wager:



(Android)                                                          (iOS)

16

Otherwise, the user is allowed to proceed with gaming if the user is within a geographic area where they are allowed to engage in gaming activity.



(Android)                                                                 (iOS)

| | Further, a review of the bytecode confirms that the Accused Products utilize one or more servers to provide information on whether gambling is allowed based on the U.S. state that the device exists. The Accused Products use a request to these servers with the device's location and obtains a response that has an error message along with a token back to the device. On information and belief, the Accused Products (or their associated backend servers) decrypt the token and then provide instructions whether to allow access to the gambling service. On information and belief, the application code for iOS implementations functions similarly. |
|---|---|
| **[1.6]** based on determining that the mobile phone is in the defined geographical area, enabling play of the second game on the mobile phone. | The Accused Products enable "play of the second game on the mobile phone" based on "determining that the mobile phone is in the defined geographical area[.]"<br><br>*See* Claim Element 1.5.<br><br>As a result of the checks described in claim 1.4 and the determination described in claim 1.5, if the user is not within "a geographical area in which the user is allowed to engage in gaming activity," the following message is displayed: |

*U.S. Patent No. 12,400,515*



(Android)                                                                                  (iOS)

19

Or this screen may be displayed if trying to make a wager:



(Android)                                                    (iOS)

Otherwise, the user is allowed to proceed with gaming if the user is within a geographic area where they are allowed to engage in gaming activity.



(Android)                                                                 (iOS)

| | |
|---|---|
| **[5]** The method of claim 1, wherein the defined geographical area is a geo-fenced region. | The Accused Products include a "defined geographical area" that is a "geo-fenced region." <br><br> *See* Claim Element 1.4. At least one of the location checks performed in the Accused Products uses a geo-fenced region. |
| **[6]** The method of claim 1, wherein determining that the mobile phone is in the defined geographical area further comprises determining that the mobile phone is in the defined geographical area based on a signal strength associated with the mobile phone. | The Accused Products determine "that the mobile phone is in the defined geographical area based on a signal strength associated with the mobile phone." <br><br> A review of the bytecode confirms that the Accused Products meet this in at least three different ways. <br><br> First, the Accused Products send Wi-Fi information to one or more servers via an XML payload in order to determine a location and whether gambling is permitted in that location. The XML has a field named "wifi" with parameters such as latitude, longitude, altitude, accuracy, etc. In addition, it contains another field named "ap," which includes information such as the Wi-Fi access point's SSID, MAC address, signal strength, frequency, etc. <br><br> Second, similar to the Wi-Fi information, the Accused Products also send cellular information to one or more servers to determine the location of the mobile phone and whether gambling is permitted. The Accused Products send the following subset of cellular information to their servers, which includes signal strength: <br> • The cellular identifier (CID) which is a unique number used to identify each base transceiver station (BTS) or sector of a BTS within a location area code (LAC). <br> • The cellular mobile country code (MCC) and mobile network code (MNC) to uniquely identify the mobile network operator. <br> • The ASU signal strength (SS) technology-specific signal strength in Arbitrary Strength Units, calculated from the strength of the pilot signal or equivalent. <br><br> On information and belief, the application code for iOS implementations functions similarly. <br><br> Finally, as explained in 1.4, the Accused Products also rely on Google Location Services to determine location, which also, on information and belief, uses a signal strength (both Wi-Fi and Cellular) to triangulate the mobile phone. |

| | |
|---|---|
| **[7]** The method of claim 1, wherein determining that the mobile phone is in the defined geographical area further comprises determining that the mobile phone is in the defined geographical area based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled. | The Accused Products determine "that the mobile phone is in the defined geographical area based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled." <br><br> *See* Claim 6. Each of the Wi-Fi information, the cellular information, and the Google Location Services identify a radio frequency transceiver or a mobile network to which the mobile phone is communicatively coupled. This information is used as part of determining the location of the phone. |
| **[9.P]** A system, comprising: | The Accused Products include a "system, comprising[.]" <br><br> *See* Claim Element 1.P and Claim Element 9.1. The Accused Products include a mobile application installed on a mobile device in communication with one or more servers. |
| **[9.1]** one or more computer servers configured to: | The Accused Products include "one or more computer servers configured to[.]" |

| | |
|---|---|
| | The Accused Products use many servers that are associated with the gambling service to perform game recommendations and location services.  They are used both as primary and secondary. Some of these servers along with their correlated IP addresses used by the Accused Products include:<br><br>• api.fanduel.com (18.238.176.80)<br>• ips.sportsbook.fanduel.com (65.8.243.38)<br>• status.fanduel.com (18.154.101.117)<br>• bvp.sportsbook.fanduel.com (23.211.124.136)<br>• us7-es.geocomply.com (23.21.79.148) |
| **[9.2]** identify a first game played by a user based on at least one of an amount of time that a first game was played by the user or a number of times that the first game was played by the user; | The Accused Products identify a "first game played by a user based on at least one of an amount of time that a first game was played by the user or a number of times that the first game was played by the user[.]"<br><br>*See* Claim Element 1.1. |
| **[9.3]** determine a second game that has a common characteristic with the first game and determine that the second game is currently | The Accused Products determine a "second game that has a common characteristic with the first game and determine that the second game is currently being played by a threshold number of people[.]"<br><br>*See* Claim Element 1.2. |

24

| | |
|---|---|
| being played by a threshold number of people; | |
| **[9.4]** based on a determination of the second game that has the common characteristic with the first game and a determination that the second game is currently being played by the threshold number of people, provide a recommendation to play the second game to a mobile phone for display on the mobile phone; | The Accused Products provide a "recommendation to play the second game to a mobile phone for display on the mobile phone" based on "a determination of the second game that has the common characteristic with the first game and a determination that the second game is currently being played by the threshold number of people[.]" *See* Claim Element 1.3. |
| **[9.5]** obtain Global Positioning System (GPS) coordinates of | The Accused Products obtain "Global Positioning System (GPS) coordinates of the mobile phone[.]" *See* Claim Element 1.4. |

| | |
|---|---|
| the mobile phone; | |
| **[9.6]** determine that the mobile phone is in a defined geographical area in which gambling is permitted based on the GPS coordinates; and | The Accused Products determine "that the mobile phone is in a defined geographical area in which gambling is permitted based on the GPS coordinates[.]" <br><br> *See* Claim Element 1.5. |
| **[9.7]** based on a determination that the mobile phone is in the defined geographical area, enable play of the second game on the mobile phone. | The Accused Products enable "play of the second game on the mobile phone" based on "a determination that the mobile phone is in the defined geographical area[.]" <br><br> *See* Claim Element 1.6. |
| **[13]** The system of claim 9, wherein the defined geographical area is a geo-fenced region. | The Accused Products include a "defined geographical area" that is a "geo-fenced region." <br><br> *See* Claim 5. |
| **[14]** The system of claim 9, wherein, to determine that | The Accused Products determine "that the mobile phone is in the defined geographical area based on a signal strength associated with the mobile phone." <br><br> *See* Claim 6. |

| | |
|---|---|
| the mobile phone is in the defined geographical area, the one or more computer servers are configured to determine that the mobile phone is in the defined geographical area based on a signal strength associated with the mobile phone. | |
| **[15]** The system of claim 9, wherein, to determine that the mobile phone is in the defined geographical area, the one or more computer servers are configured to determine that the mobile phone is in the | The Accused Products determine "that the mobile phone is in the defined geographical area based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled." <br><br> *See* Claim 7. |

27

| | |
|---|---|
| defined geographical area based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled. | |
| **[17.P]** A method comprising: | The Accused Products include a "method comprising[.]" <br><br> *See* Claim Element 1.P. |
| **[17.1]** determining information regarding a first game played via a mobile phone, wherein the information comprises at least one of an amount of time the first game is played via the mobile phone or a number of times the first game was | The Accused Products determine "information regarding a first game played via a mobile phone, wherein the information comprises at least one of an amount of time the first game is played via the mobile phone or a number of times the first game was played via the mobile phone[.]" <br><br> *See* Claim Element 1.1. |

| | |
|---|---|
| played via the mobile phone; | |
| **[17.2]** providing the information to one or more computer servers; | The Accused Products provide "the information to one or more computer servers[.]"<br><br>*See*Claim Element 1.1, Claim Element 9.1, and Claim Element 9.3. |
| **[17.3]** receiving, from the one or more computer servers, a recommendation to play a second game that has a common characteristic with the first game, wherein the recommendation is based on the information and an increase in play of the second game by a plurality of people over a period of time; | The Accused Products receive "a recommendation to play a second game that has a common characteristic with the first game, wherein the recommendation is based on the information and an increase in play of the second game by a plurality of people over a period of time[.]"<br><br>*See* Claim Element 1.3. |
| **[17.4]** displaying, at the mobile phone, the | The Accused Products display "at the mobile phone, the recommendation[.]"<br><br>*See* Claim Element 1.6. |

29

| | |
|---|---|
| recommendation; | |
| **[17.5]** based on a determination that the mobile phone is in a defined geographical area, enabling play of the second game on the mobile phone, wherein the defined geographical area is a geo-fenced region. | The Accused Products enable "play of the second game on the mobile phone" based on "a determination that the mobile phone is in a defined geographical area," wherein the "defined geographical area is a geo-fenced region." <br><br>*See* Claim Element 1.6. |
| **[18.1]** The method of claim 17, wherein the common characteristic comprises at least one of: a game category of the first game and the second game; or a demographic characteristic of users playing the first game and | The Accused Products include a "common characteristic compris[ing] at least one of: a game category of the first game and the second game; or a demographic characteristic of users playing the first game and the second game." <br><br>*See* Claim 3. |

| | |
|---|---|
| the second game. | |
| **[19]** The method of claim 18, wherein the demographic characteristic comprises: an age of the users; an occupation of the users; a geographical location of the users; a language spoken by the users; or an income range of the users. | The Accused Products include a "demographic characteristic compris[ing]: an age of the users; an occupation of the users; a geographical location of the users; a language spoken by the users; or an income range of the users."<br><br>*See* Claim 4. |
| **[20]** The method of claim 17, wherein the determination that the mobile phone is in the defined geographical area is based on Global Positioning System (GPS) coordinates of the mobile phone. | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "Global Positioning System (GPS) coordinates of the mobile phone."<br><br>*See* Claim Element 1.4. |

| | |
|---|---|
| **[21]** The method of claim 17, wherein the determination that the mobile phone is in the defined geographical area is based on a signal strength associated with the mobile phone. | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "a signal strength associated with the mobile phone." <br><br> *See* Claim 6. |
| **[22]** The method of claim 17, wherein the determination that the mobile phone is in the defined geographical area is based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled. | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled." <br><br> *See* Claim 7. |

32

*U.S. Patent No. 12,400,515*

| | |
|---|---|
| **[24.P]** A system, comprising: | The Accused Products include a "system, comprising[.]"<br><br>*See* Claim Element 9.P. |
| **[24.1]** one or more computer servers; and | The Accused Products include "one or more computer servers[.]"<br><br>*See* Claim Element 9.1. |
| **[24.2]** an application configured for execution on a mobile phone, the application configured to: | The Accused Products include "an application configured for execution on a mobile phone, the application configured to[.]" |
| **[24.3]** determine information regarding a first game played via a mobile phone, wherein the information comprises at least one of an amount of time the first game is played via the mobile phone or a number of times the first game was played via the mobile phone; | The Accused Products determine "information regarding a first game played via a mobile phone, wherein the information comprises at least one of an amount of time the first game is played via the mobile phone or a number of times the first game was played via the mobile phone[.]"<br><br>*See* Claim Element 1.1. |

33

| | |
|---|---|
| **[24.4]** provide the information to one or more computer servers; | The Accused Products provide "the information to one or more computer servers[.]"<br><br>*See* Claim Element 17.2. |
| **[24.5]** receive, from the one or more computer servers, a recommendation to play a second game that has a common characteristic with the first game, wherein the recommendation is based on the information and an increase in play of the second game by a plurality of people over a period of time; | The Accused Products receive "a recommendation to play a second game that has a common characteristic with the first game, wherein the recommendation is based on the information and an increase in play of the second game by a plurality of people over a period of time[.]"<br><br>*See* Claim Element 1.3. |
| **[24.6]** display, at the mobile phone, the recommendation; | The Accused Products display "at the mobile phone, the recommendation[.]"<br><br>*See* Claim Element 1.6. |
| **[24.7]** based on a determination | The Accused Products enable "play of the second game on the mobile phone" based on "a determination that the mobile phone is in a defined geographical area," wherein the "defined geographical area is a geo-fenced region." |

34

| | |
|---|---|
| that the mobile phone is in a defined geographical area, enable play of the second game on the mobile phone, wherein the defined geographical area is a geo-fenced region. | *See* Claim Element 1.6 and Claim 5. |
| **[25.1]** The system of claim 24, wherein the common characteristic comprises at least one of: a game category of the first game and the second game; or a demographic characteristic of users playing the first game and the second game. | The Accused Products include a "common characteristic compris[ing] at least one of: a game category of the first game and the second game; or a demographic characteristic of users playing the first game and the second game."<br><br>*See* Claim 3. |
| **[26]** The system of claim 25, wherein the | The Accused Products include a "demographic characteristic compris[ing]: an age of the users; an occupation of the users; a geographical location of the users; a language spoken by the users; or an income range of the users." |

| | |
|---|---|
| demographic characteristic comprises: an age of the users; an occupation of the users; a geographical location of the users; a language spoken by the users; or an income range of the users. | *See* Claim 4. |
| **[27]** The system of claim 24, wherein the determination that the mobile phone is in the defined geographical area is based on Global Positioning System (GPS) coordinates of the mobile phone. | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "Global Positioning System (GPS) coordinates of the mobile phone."<br><br>*See* Claim Element 1.4. |
| **[28]** The system of claim 24, wherein the determination that the mobile | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "a signal strength associated with the mobile phone."<br><br>*See* Claim 6. |

36

| | |
|---|---|
| phone is in the defined geographical area is based on a signal strength associated with the mobile phone. | |
| **[29]** The system of claim 24, wherein the determination that the mobile phone is in the defined geographical area is based on at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled. | The Accused Products make a "determination that the mobile phone is in the defined geographical area" based on "at least one of a radio frequency (RF) transceiver or a mobile network to which the mobile phone is communicatively coupled." <br><br> *See* Claim 7. |

37