**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| INTERACTIVE GAMES LLC,<br><br>Plaintiff,<br><br>v.<br><br>FANDUEL, INC. and<br>BETFAIR INTERACTIVE US, LLC,<br><br>Defendants. | Case No. 1:26-cv-03514-KMW-SAK |

**<u>REPLY BRIEF IN SUPPORT OF FANDUEL'S MOTION TO DISMISS</u>**

Samuel Lonergan
Daniel L. Reisner
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-1000
Samuel.Lonergan@arnoldporter.com
Daniel.Reisner@arnoldporter.com

Philip W. Marsh (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: (650) 319-4500
Philip.Marsh@arnoldporter.com

Evan M. Rothstein (*pro hac vice*)
Patrick Hall (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
Telephone: (303) 863-2569
Evan.Rothstein@arnoldporter.com
Patrick.Hall@arnoldporter.com

*Attorneys for Defendant FanDuel, Inc.*
*And Betfair Interactive US, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The Asserted Claims Are Invalid Under 35 U.S.C. § 101 .......... 2

A. The Court May Appropriately Determine Subject Matter Eligibility by Analyzing Representative Claims .......... 3

B. All Asserted Claims Are Directed to Unpatentable Abstract Ideas .......... 7

C. None of the Asserted Claims, Either Alone or in Combination, Recite an Inventive Concept .......... 13

II. The Willfulness Claims Fail .......... 15

CONCLUSION .......... 15

## TABLE OF AUTHORITIES

## CASES

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ........................................................14

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014) ........................................................7, 14

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........................................................3

*Beteiro, LLC v. BetMGM, LLC*,
626 F. Supp. 3d 789 (D.N.J. 2022) ........................................................1

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ........................................................ passim

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
813 F. App'x 584 (Fed. Cir. 2020) ........................................................6

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
2016 WL 4521682 (D. Nev. Aug. 29, 2016) ........................................................2

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
442 F. Supp. 3d 840 (D. Del. 2020) ........................................................2

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
858 F. App'x 363 (Fed. Cir. 2021) ........................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ........................................................4

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ........................................................3

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ........................................................5

*GeoComply Sols. Inc. v. Xpoint Servs. LLC*,
2023 WL 1927393 (D. Del. Feb. 10, 2023) ........................................ 1, 9, 11, 12

*GeoComply Sols. Inc. v. Xpoint Servs. LLC*,
2024 WL 4717268 (Fed. Cir. Nov. 8, 2024)....................................................1, 10

*Geoscope Techs. Pte. Ltd. v. Google LLC*,
2025 WL 1276235 (Fed. Cir. May 2, 2025) ........................................................13

*Green Pet Shop Enters., LLC v. Telebrands Corp.*,
2018 WL 547544 (D.N.J. 2018) ..........................................................................15

*In re McFadden*,
No. 2025-1834, 2026 WL 934154 (Fed. Cir. Apr. 7, 2026)..................................6

*Intell. Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)...........................................................................13

*LendingTree, LLC v. Zillow, Inc.*,
656 F. App'x 991 (Fed. Cir. 2016) ........................................................................7

*Micro-Gaming Ventures, LLC v. DraftKings, Inc.*,
2026 WL 867761 (D.N.J. Mar. 30, 2026)........................................................1, 3

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .......................................................................3, 5

*Netflix, Inc. v. Rovi Corp.*,
114 F. Supp. 3d 927 (N.D. Cal. 2015) ................................................................11

*Netflix, Inc. v. Rovi Corp.*,
670 F. App'x 704 (Fed. Cir. 2016) .....................................................................11

*NEXRF Corp. v. Playtika Ltd.*,
2022 WL 153310 (Fed. Cir. May 13, 2022) ..........................................................2

*NEXRF Corp. v. Playtika Ltd.*,
547 F. Supp. 3d 977 (D. Nev. 2021)................................................................2, 12

*Ollnova Techs. Ltd. v. ecobee Techs. ULC*,
No. 2025-1045, 2026 WL 1596936 (Fed. Cir. June 4, 2026).................................9

*Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*,
161 F. Supp. 3d 325 (D. Del. 2015)....................................................................13

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017) ....................12

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023)....................5

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017).................... 11, 14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019)....................11

*TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016)....................14

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....................6

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) .................... 7, 11, 12

*WinView Inc. v. FanDuel, Inc.*,
2025 WL 1908758 (D.N.J. July 11, 2025)....................10

*WinView IP Holdings, LLC v. DraftKings Inc.*,
2026 WL 746932 (D.N.J. Mar. 17, 2026)....................15

## STATUTES

35 U.S.C. § 101 .................... 3, 6, 7

## INTRODUCTION

According to Interactive Games ("IG"), that the asserted patents merely recite longstanding "brick-and-mortar gambling practices" on a smartphone makes no difference. Opp. 2; *but see Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024). Instead, IG advances the indefensible position that the Court should separately construe and analyze 133 asserted patent claims before any determination on validity can occur. IG further contends that its conclusory allegations that ubiquitous smartphone features "simply did not exist," must be credited over statements in the patents themselves that such off-the-shelf components were already in common use. Opp. 11; *but see Beteiro*, 104 F.4th at 1357-58. And under IG's theory, performing two generic checks of a user's location or identity rather than "a single generic check" somehow suffices for an inventive concept as if "two checks is better than one" is a transformative idea worth patenting. Opp. 20; *but see GeoComply Sols. Inc. v. Xpoint Servs. LLC*, 2023 WL 1927393, at *7 (D. Del. Feb. 10, 2023), *aff'd*, 2024 WL 4717268 (Fed. Cir. Nov. 8, 2024). None of this is the law.

Instead patent claims directed to the abstract concept of allowing a user to gamble on a smartphone based on the user's location are routinely rejected. *See, e.g.*, *Beteiro*, 104 F.4th 1350; *Micro-Gaming Ventures, LLC v. DraftKings, Inc.*, 2026 WL 867761 (D.N.J. Mar. 30, 2026); *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789 (D.N.J. 2022); *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977 (D. Nev.

2021), *aff'd*, 2022 WL 153310 (Fed. Cir. May 13, 2022). And, courts repeatedly do so in suits brought by IG asserting similar claims. *See, e.g.*, *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 2016 WL 4521682, at *13 (D. Nev. Aug. 29, 2016).

IG all but ignores this, relegating the cases decided against it to a single footnote. *See* Opp. 23, n.4. It also does not address any of the four indicia of abstractness that the Federal Circuit recognized in *Beteiro*—a precedential decision that took up similar location-based gaming patents—each of which mandates dismissal. *See* Mot. 18-25. Nor does it grapple with the fact that, notwithstanding its assertion that the patents cover only narrow purported improvements to smartphone technology, it alleged infringement merely because "FanDuel's Mobile Apps include services for detecting the location of users and verifying those users." Compl. ¶¶ 127-137. Binding precedent forecloses patent protection for that abstract idea, and all claims should be dismissed. The Court should also dismiss the willful infringement claims as discussed in the Motion and below.

## ARGUMENT

### I. The Asserted Claims Are Invalid Under 35 U.S.C. § 101

Abstract ideas are ineligible for patent protection, and a patents claiming subject matter that is ineligible as a matter of law are unenforceable. *E.g.*, *Beteiro*,

104 F.4th at 1359; *Micro-Gaming Ventures*, 2026 WL 867761, at *2; 35 U.S.C. § 101. None of IG's arguments warrant departing from the numerous decisions finding similar online-gambling claims ineligible and unenforceable.

### A. The Court May Appropriately Determine Subject Matter Eligibility by Analyzing Representative Claims

At the outset, IG contends that the Court should deny the motion because FanDuel did not separately analyze IG's "full asserted set" of 133 patent claims. Opp. 12-15. But it makes no effort to articulate why any distinguishing feature of any of the myriad claims affects the eligibility analysis.

IG gets the law exactly backwards. Once a defendant "make[s] a prima facie showing that the group of claims are 'substantially similar and linked to the same' ineligible concept, . . . the burden shifts to the patent owner. . . . " *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). IG cannot force the court to separately analyze 133 claims merely by "point[ing] to" other claims, without reasoning why that "claim has 'distinctive significance' that would have a material impact on the eligibility analysis." *Mobile Acuity Ltd.*, 110 F.4th at 1290 (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)).

As FanDuel explained (at 5-6, 12-13), IG's complaint itself lumps the asserted claims together and cites only a handful of representative examples. It asserts that each claim is directed to verifying user "identity," confirming user "location,"

confirming "that the user had not implemented any software" that allows circumventing regulations and fraud detection. Compl. ¶ 30 (citing all five asserted patents). Indeed, the complaint makes clear that even *specific features* are common among the patents. *See, e.g.*, Compl. ¶ 36; *id.* ¶ 50. After alleging that numerous claims of patents in the same patent family describe a common "system" for geolocation, Compl. ¶ 50, and FanDuel relying on these statements to propose the representative claims, IG cannot now contend that its claims are directed to different subject matter. The same is true of the '181 and '302 Patents, which IG argues FanDuel failed to analyze separately. Opp. 14-15, 28. The '181 Patent's rooting and device-integrity checks are the same limitations recited in FanDuel's representative '138 claim—"determin[ing] that an operating system running on the smart phone has not been rooted based on the list of applications installed," see Mot. 14—and its application-signature verification is conventional, see Mot. 36. The '302 claims recite geofencing only as a result—"determin[ing] whether the mobile device is within or without" a "gaming-allowed geographical area" and "allow[ing] or disallow[ing]" gaming on that basis, '302 Patent cls. 1, 22—which is the location-and-authorization step *Beteiro* held abstract.[1]

[1] The dependent claims fare no better because, for example, the "donut hole" and nested-geofence processes IG invokes (Opp. 6-7) are unclaimed. *Id.* cls. 6, 17. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (reliance on the specification "must always yield to the claim language"). It is IG's

In any event, as discussed below, none of the minor variations IG identifies affect the eligibility analysis. And that is all that Federal Circuit precedent requires to deem a patent claim representative.[2] *See, e.g.*, *Mobile Acuity*, 110 F.4th at 1292 (identifying additional elements in other claims is "unavailing" where those elements do not "affect[] the eligibility analysis"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (claims are "substantially similar" if "they recite little more than the same abstract idea" even if some dependent claims "recite additional steps").

Here, even the few purported distinguishing features IG identifies either already appear in the representative claims or make no meaningful difference. *Compare* Opp. 13 (referring to location checks based on a "first" and "second distance" from state borders) *with* Mot. 13-14 (identify representative claim stating the same); Opp. 14 (referring to checking whether a device "has not been rooted") *with* Mot. 14 (identifying representative claim with same rooting limitation) *and* Mot. 36 (explaining that courts have repeatedly held use of a hash signature to be non-inventive); Opp. 14 (referring to checking a device's location based on GPS and

---

burden to show that a distinguishing limitation carries "distinctive significance" for eligibility, *Mobile Acuity*, 110 F.4th at 1290, and it identifies none.

[2] A "generalized objection" that "there are likely to be unspecified claim construction arguments later in the litigation," as IG asserts, is also insufficient to show that claims are nonrepresentative. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 n.1 (Fed. Cir. 2023) (cleaned up).

"signal strength") *with* Mot. 14 (identifying representative claim directed to "GPS" and "cellular signal information") *and* Mot. 31-33 (explaining that use of this generic location information has been held to be non-inventive).

IG does not explain how any of the minor variations affect the eligibility analysis, a failure fatal to its position. IG's means-plus-function arguments fare no better. IG insists those limitations must be construed before eligibility can be assessed, Opp. 17-18, yet it never explains why. That omission is dispositive: a patentee cannot defeat a §101 motion by invoking the need for construction in the abstract, but must "propose a specific claim construction" and explain why it matters. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023). And IG does not argue why, once construed, its means-plus-function limitations would correspond to anything beyond the generic computing components already addressed in the Motion. *Cf. In re McFadden*, No. 2025-1834, 2026 WL 934154, at *2 (Fed. Cir. Apr. 7, 2026) (means-plus-function structure limited to "software running on generic computer elements" did not render claims eligible).[3]

IG also contends that the claims are nonrepresentative because it "did not even assert" claim 1 of the '515 Patent. Opp. 2; *see id.* at 14. To the contrary, IG quoted extensively from that claim—and no other claims of the '515 Patent—in its

[3] A party that presents "no separate argument for the eligibility of [a] claim … ha[s] forfeited its ability to argue that other claims are separately patent eligible." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020).

complaint. Compl. ¶ 94; *see also id.* ¶ 186 (identifying other ’515 Patent claims as merely “an example” of the allegedly infringed claims). IG’s error only underscores why analysis of representative claims is both necessary and appropriate here. Despite the numerous claims IG asserts in the ’515 Patent, all of those claims are directed to the same abstract idea—so much so that not even IG itself can keep them straight.

The position that the sheer number of duplicative claims—a number no party could individually address—precludes a motion to dismiss is mistaken. Equally mistaken is IG’s reliance on FanDuel’s parallel motion to stay (Opp. 16-17). The fact that claim construction may be needed generally if the Court denies this Motion says nothing about whether construction is needed to resolve eligibility now—and, as discussed above, IG has identified no construction that affects the §101 inquiry.

**B. All Asserted Claims Are Directed to Unpatentable Abstract Ideas**

All of IG’s claims are directed toward the abstract idea of enabling online gambling based on the gambler’s location, and thus flunk the first step of *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). This step turns on a claim’s “character as a whole,” *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021), an inquiry IG skips in favor of listing generic computer technologies. *See* Opp. 18-32. Courts have found it “sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.” *LendingTree, LLC v. Zillow, Inc.*, 656 F. App’x 991, 995 (Fed. Cir. 2016)

(citation omitted). Many cases, *see supra*, at pp. 1-2, find patent claims concerning the same subject matter to be directed to an unpatentable abstract idea.

In *Beteiro*, the Federal Circuit comprehensively explained why. In rejecting claims "directed to the abstract idea of exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located," the court outlined four "well-settled indicators of abstractness." *Beteiro*, 104 F.4th at 1355 (quotation marks omitted). Each of those indicia of abstractness apply with equal force here. *See* Mot. 19-25. IG declines to address even one.

*First*, the asserted claims recite "generic steps of a kind [the Federal Circuit] ha[s] frequently held are abstract: detecting information, generating and transmitting a notification based on the information, receiving a message (a bet request), determining (whether the bet is allowed based on location data), and processing information (allowing or disallowing the bet)." *Beteiro*, 104 F.4th at 1355. Whether "GPS information," "signal information," a "wagering characteristic," or a "hash" value, '138 Patent 60:30-59; '226 Patent 19:1-42; '302 Patent 71:51-60, detecting information using generic components and allowing a bet on that basis are generic—a defect that applies to every one of the asserted claims.

*Second*, the asserted claims employ nearly exclusively "result-focused functional language." *Beteiro*, 104 F.4th at 1356. That is, they call for "determin[ing]" a gambler's eligibility based on these generic types of information

without instructing *how* that determination should be made. Representative claim 1 of the ’138 Patent, for example, calls for “determin[ing], based on one or more first location checks … that the smart phone is a first distance from a border of a U.S. state where gambling is allowed” but provides no details as to how that determination should be made. ’138 Patent 60:30-59; *see also* ’138 Patent 61:24-38 (“determine that an operating system running on the smart phone has not been rooted based on the list of applications installed on the smart phone”); ’515 Patent 63:48-64:3 (“provid[e] a recommendation to play [a] second game” “based on determining the second game that has [a] common characteristic with the first game”). It is telling that IG quotes only isolated words and phrases from the asserted claims. *See* Opp. 4-9. Read a claim in full, and any inventive concept falls away.

IG’s reliance on *Ollnova* (Opp. 27-29) is of no moment. *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, No. 2025-1045, 2026 WL 1596936, at *11 (Fed. Cir. June 4, 2026). The claims *Ollnova* found non-abstract recited a specific mechanism governing when and how a controller transmitted data—reporting a parameter “only during a polling interval” and only when “outside a predetermined range.” IG’s claims recite no such mechanism; they call for “determin[ing]” when to recheck location “based” on distance, speed, and direction without specifying how. That is the result-focused functional language *Beteiro* condemns, 104 F.4th at 1356; *GeoComply*, 2023 WL 1927393, at *7 (“Even outside the gaming context, the idea

of using multiple sources of information to verify a person's location is a longstanding business practice."), *aff'd*, 2024 WL 4717268 (Fed. Cir. Nov. 8, 2024).

*Third*, extensive precedent has rejected "broadly analogous claims." *Beteiro*, 104 F.4th at 1356; *see supra*, at pp. 1-2. IG does not distinguish cases rejecting analogous claims. Instead, it invokes only a single non-precedential decision that had nothing to do with location or identity verification and instead addressed the uniquely digital problem of remotely storing real-time player data across a computer network. *See WinView Inc. v. FanDuel, Inc.*, 2025 WL 1908758, at *2-3 (D.N.J. July 11, 2025); *id.* at *8 (distinguishing *Beteiro* on that basis).

*Fourth*, the asserted claims are analogous "to longstanding 'real-world' ('brick and mortar') activities." *Beteiro*, 104 F.4th at 1356; *see* Mot. 21-25, 26-27, 28-29 (exhaustively detailing the historical parallels for each group of asserted claims). Defying *Beteiro*, IG faults FanDuel (at 2) for "analogies to … brick-and-mortar gambling practices," but these analogies and historical parallels are *precisely* what Federal Circuit relied upon to determine that location-verification claims were directed to an abstract idea: "[T]hose accepting bets have *always* had to confirm that the bettor with whom they were dealing was located in a place where gambling was allowed." *Beteiro*, 104 F.4th at 1356. And as other courts have recognized, verifying a person's identity or recommending similar content to that a consumer has enjoyed are likewise fundamental and longstanding economic activities. *See,*

*e.g.*, *Universal Secure Registry*, 10 F.4th at 1346; *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 946 (N.D. Cal. 2015), *aff'd*, 670 F. App'x 704 (Fed. Cir. 2016).

*None of the additional arguments IG raises show otherwise.*

1. Invoking "network security" does not salvage the identity-verification claims. *See* Opp. 19-26. Verifying a gambler's identity, including by verifying the authenticity of a gambler's credentials, is a longstanding real-world business practice. *See* Mot. 22, 26-27. The claims in the case IG relies on did not merely call for verifying a user's identity with generic computer equipment. They detailed a method of "using network monitors to detect suspicious network activity based on analysis of network traffic data, generating reports of that suspicious activity, and integrating those reports using hierarchical monitors." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019).

In contrast, checking to see if a device is running software that could spoof a user's location, whether by examining a "list of applications installed on the smart phone" directly or a "hash" value containing the same information, is a generic computer operation. '138 Patent 61:24-38; '302 Patent 71:50-60; *see GeoComply*, 2023 WL 1927393, at *2, *7; *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1375 n.9 (Fed. Cir. 2017). IG attempts to distinguish *GeoComply* because the claim there recited "a generic determination of the programs running on a device, without specifying what those programs were." Opp. 22. But even a cursory

inspection of the claims asserted here—notably absent from IG's argument—reveals the same defect. Representative claim 5 of the '138 Patent, for example, calls for "receiv[ing] … a list of applications installed on the smart phone" and—without specifying the relevant applications—"determin[ing] that an operating system running on the smart phone has not been rooted based on the list of applications installed on the smart phone." '138 Patent 61:24-38. At least in *GeoComply*, the patent-holder specified the "*types* of programs" relevant to that determination: a "proxy application" or a "screen sharing program." *GeoComply*, 2023 WL 1927393, at *2, *7. IG's claims fail to include even that insufficient limitation.

Combining generic location and identity-verification steps adds nothing beyond the abstract idea of verifying that a gambler is authorized to gamble. *See id. Contra* Opp. 24-26. And a gambler's eligibility to gamble is something that "those accepting bets have *always* had to confirm." *Beteiro*, 104 F.4th at 1356 (cleaned up). For that reason, the Federal Circuit repeatedly rejects claims "directed to 'the abstract idea of obtaining the secure verification of a user's identity to enable a transaction." *Universal Secure Registry*, 10 F.4th 1349 (citation omitted); *see, e.g.*, *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017).

2. IG's recommendation claims fare no better. It does not dispute precedent holding that recommending similar products to consumers—including "gambling tailored to a user's location" is an unpatentable abstract idea. *NEXRF Corp.*, 547 F.

Supp. 3d 977; *see, e.g.*, *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325, 338 (D. Del. 2015), *aff'd*, 671 F. App'x 777 (Fed. Cir. 2016); *Netflix*, 114 F. Supp. 3d at 946, *aff'd*, 670 F. App'x 704. Its assertion that the '515 Patent claims something more "because it verifies location *and* recommends games," Opp. 30-32, illustrates the common defect affecting all asserted claims.

### C. None of the Asserted Claims, Either Alone or in Combination, Recite an Inventive Concept

Here, IG ignores the precedent holding that "GPS", "signal strength," and "hash identifier[s]" are generic features of mobile computing. *Beteiro*, 104 F.4th at 1358 (first quotation); *Geoscope Techs. Pte. Ltd. v. Google LLC*, 2025 WL 1276235, at *2, 4 n.5 (Fed. Cir. May 2, 2025) (second quotation); *Smart Sys. Innovations*, 873 F.3d at 1375 n.9 (third quotation). IG's suggestion that "server computers," "applications," or "operating system[s]" are inventive, Opp. 34, is also unsupported. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). And it fails to dispute that the specifications themselves refer to preexisting "wrapper application[s]," generic computer programs whose entire purpose is to enable cross-platform applications. Mot. 33-34 (quoting '138 Patent 24:6-14).

The '138 and '181 common specification confirms this by describing the wrapper in terms of known, platform-specific varieties—"an android wrapper application, a win32 wrapper application." '138 and '181 Patents 26:31-32. And it says the recited functions may be performed by "a wrapper application, a main

application, and/or any other component," *id.* at 26:10-12, confirming that the wrapper's placement is an indifferent design choice, not an inventive one. *See Alice*, 573 U.S. at 221-23.[4] IG does not contend that the claims employ these generic components beyond "their ordinary use." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016). Servers are used to receive and transmit information; location information is used to verify location; and hash identifiers are used to verify an application's "digital fingerprint." *Smart Sys. Innovations*, 873 F.3d at 1375 n.9.

Instead, IG advances just one argument on inventiveness: that unspecified "factual disputes" "preclude dismissal." Opp. 34-38. "Conclusory allegations" that claims are unconventional are insufficient to defeat dismissal. *Beteiro, LLC*, 104 F.4th at 1358 (quoting *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024)). Here, the "intrinsic record" establishes that the wrapper's interoperability was already well known. *AI Visualize*, 97 F.4th at 1380. IG's contention that its claims bring conventional gambling activity to a "smartphone-native" environment, Opp. 37, is precisely what *Alice* forbids: reciting an abstract idea and "adding the words 'apply it with a computer.'" *Alice*, 573 U.S. at 223.

---

[4] IG suggests that the use of the generic function calls "*WifiEnabled()* and *getWifiState()*" was somehow inventive. Opp. 30. As its patent specification make clear, these function calls—basic commands in a programming language—were already available in the "Android OS." *See, e.g.*, '138 Patent 56:29-60. A direction to call "WifiEnabled()" amounts to nothing more than the digital equivalent of checking if a router's "on" switch is on.

## II. The Willfulness Claims Fail

IG's willful infringement claims should also be dismissed because it sent the letter it relies upon one day before filing suit. *See* Opp. 38. That FanDuel allegedly failed to act on that letter by the very next morning cannot possibly demonstrate "continued infringement" or "make[] plausible an inference of subjective willfulness." Opp. 38 (quoting *Green Pet Shop Enters., LLC v. Telebrands Corp.*, 2018 WL 547544, at *2 (D.N.J. 2018)).

Neither an earlier letter which failed to "disclose[] the patents at issue," *WinView IP Holdings, LLC v. DraftKings Inc.*, 2026 WL 746932, at *9 (D.N.J. Mar. 17, 2026), nor IG's allegation that FanDuel is "aware of Cantor Gaming's gaming-related patents when they issue," Compl. ¶ 188, suffices to bridge the gap. To state a claim for willful infringement, IG at the very least "must allege *facts* plausibly showing that as of the time of the claim's filing" FanDuel "knew of the patents" and later chose to infringe them. *Id.* (emphasis added). Its complaint contains none.

## CONCLUSION

For the foregoing reasons, all claims should be dismissed with prejudice.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Samuel Lonergan*

Samuel Lonergan
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-1000
Samuel.Lonergan@arnoldporter.com

Daniel L. Reisner (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-1000
Daniel.Reisner@arnoldporter.com

Evan M. Rothstein (*pro hac vice*)
Patrick Hall (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
1144 Fifteenth Street, Suite 3100
Denver, Colorado 80202
Telephone: (303) 863-2569
Evan.Rothstein@arnoldporter.com
Patrick.Hall@arnoldporter.com

Philip W. Marsh (*pro hac vice*)
Arnold & Porter Kaye Scholer, LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: (650) 319-4500
Philip.Marsh@arnoldporter.com
Estayvaine.Bragg@arnoldporter.com

*Attorneys for Defendant FanDuel, Inc.*
*And Betfair Interactive US, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2026, I caused the foregoing Reply Brief in Support of FanDuel's Motion to Dismiss to be filed electronically with the Clerk of the United States District Court for the District of New Jersey using the CM/ECF system. I further certify that all counsel of record who have appeared in this action are registered CM/ECF users and that service will be accomplished through the CM/ECF system, which will send a Notice of Electronic Filing to the following counsel of record:

Liza M. Walsh
Christine I. Gannon
Jessica K. Formichella
WALSH PIZZI O'REILLY FALANGA, LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100
lwalsh@walsh.law
cgannon@walsh.law
formichella@walsh.law

Michael Joffre
Chandrika Vira
Daniel Block
William H. Milliken
Richard A. Crudo
STERNE, KESSLER, GOLDSTEIN & FOX, PLLC
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
mjoffre@sternekessler.com
cvira@sternekessler.com
dblock@sternekessler.com
wmilliken@sternekessler.com
rcrudo@sternekessler.com

*Attorneys for Plaintiff*
*Interactive Games LLC*

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 31, 2026

*/s/ Samuel Lonergan*
Samuel Lonergan